Syllabus.

# THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY

*v.*

# JOHN MOFFITT

1. RAILROAD — *duty to restore stream crossed to its former state applies equally to streams not navigable.* Where authority is conferred upon a railroad company, by its charter, to cross any stream of water in the line of its road, coupled with the duty to restore the stream so crossed to its former state, or such state as not to impair its usefulness, it was *held*, to apply to streams not navigable as well as to those that were navigable, as legislative authority was as necessary to cross the one as the other.

2. SAME — *extent of duty as to stream crossed.* Where a railroad company crosses a stream not navigable, under legislative authority, which also imposes a duty to leave such stream in such condition as not to materially destroy its usefulness, the company will be under substantially the same obligation as would be upon a private owner of the land and stream who had undertaken to interfere with the water course in the same way ; and if it so constructs its bridge as to obstruct the stream by the accumulation of drift, etc., and thus overflow the lands of riparian proprietors, it will be liable for the damages thereby sustained.

3. CONSOLIDATION OF RAILROADS — *rights and duties arising thereby.* Where a new corporation is formed by amalgamation, under the authority of the State, of two or more distinct corporations into one, it succeeds to all the rights and faculties of the several components, and must, as a necessary consequence, be subject to all the conditions and duties imposed by the law of their creation, except so far as it may be otherwise provided by the act under which such consolidation is effected.

4. SAME — *new company liable for wrongful acts of the companies consolidated.* Where a railroad company constructed a bridge across a stream not navigable, but affording a large volume of water, by driving piles with spans of only seventeen feet, and leased its road to another company, which, while operating the same as lessee, built a new bridge at the same place, constructed in the same manner, except that the spans were enlarged to fifty feet, but left the piles of the old bridge standing, a portion of the tops being cut off, after which these two companies consolidated, forming a new one, with a different name, and the new company continuing to operate the road and use the bridge in such condition : *Held*, that the new company was liable in damages to a riparian owner above, whose

land was overflowed and injured in consequence of an obstruction of the stream by drift, etc., caused by the manner in which the bridge was constructed and used, and that no notice to abate the nuisance was necessary to the action.

5. PRACTICE IN SUPREME COURT — *presenting questions of error.* In presenting questions of error in the admission or rejection of evidence, it is not proper to group various questions, and ask this court to pass upon the collection to see if there is not error in some of them. Counsel should make an offer in such form as to involve some principle contended for.

6. EVIDENCE — *opinions of experts.* Questions to witnesses called as experts are improper, which, failing to embody facts hypothetically, directly call upon the witness to put himself in the place of the jury and pass upon the whole issue.

APPEAL from the Circuit Court of Stark county; the Hon. H. B. HOPKINS, Judge, presiding.

The Peoria & Bureau Valley Railroad Company was empowered by its charter to construct its road across any streams of water its route might intersect, but was required to restore such streams so crossed to their former state, or in a sufficient manner not materially to impair their usefulness. Its line was from the city of Peoria to Bureau Junction. It intersected a stream called the Snatchwine — not navigable, but one of great volume of water at times. A bridge was necessary. One was built by that company. It was of piles and superstructure, but the spans were only seventeen feet apart. It was completed about the beginning of the year 1854, and thereupon, in February of that year, said company leased its entire road and appurtenances to the Chicago & Rock Island Railroad Company; the latter, taking possession under the lease, continued in the operation of the road until August 20, 1866, under that corporate name. In 1857 a portion of this bridge was carried away by a freshet. The Chicago & Rock Island Company repaired it, but upon the original plan. In the latter part of 1865, and early part of 1866, the last mentioned company constructed a new bridge across the stream, at the same place. That, also, was made of piles, with superstructure for track, and the spans

were enlarged to the width of fifty feet, instead of seventeen, as those of the old bridge were.

But, in making the new bridge, the piles of the old one were suffered to remain, a portion of the tops having been cut off. The new bridge was completed in March, 1866, and on the twentieth of the next August the Peoria & Bureau Valley R. R. Co. and the Chicago & Rock Island R. R. Co. were amalgamated into the appellant corporation, the latter operating the road and using the bridge on the condition as stated, from thence to the time of the trial. This suit was to recover damages to appellee's land, occasioned by being overflowed, caused, as it was alleged, by the bridge and piles remaining in the bed of the stream. Evidence was given tending to show that these old piles, in connection with those put in for the new bridge, caused accumulations of sand and drift-wood, resulting in the overflow and damage to appellee's land.

The defendant claimed below: 1. That the provision of said charter, as to crossing and restoring streams, applied only to navigable streams, and as this was a mere private water course, it had no application; 2. That appellant was in the same position as a grantee whose grantor had created the nuisance, and could be liable only after notice and request to abate. Instructions embodying these propositions were refused, on which error is assigned.

Messrs. Ingersoll, Puterbaugh Bros. & McCune, for the appellant.

Messrs. Page & Plum, for the appellee.

Mr. Justice McAllister delivered the opinion of the Court:

The appellant was formed by the amalgamation of the Peoria & Bureau Valley Railroad Company and the Chicago & Rock Island Railroad Company. A material question arises, whether the provision in the charter of the first named corporation, respecting the crossing of streams and the requirement to

restore them to their former state, or in sufficient manner not to materially impair their usefulness, applies to the water course in question, it not being a navigable stream.

Appellant's counsel insist that it has no application to any but navigable streams. The language employed would seem to warrant no such limitation. The corporation created by the charter was, neither in fact, nor presumptively, the owner of the streams in its route ; hence, it required legislative authority to cross them with its road, and this necessity existed, whether the streams to be crossed happened to be public highways or mere private water courses.

The authority is given by the charter to cross *any* stream of water in the route or line of its road, but it is coupled with the duty to restore the stream so crossed to its former state, or such state as not to materially impair its usefulness. The corporation was bound by this statutory duty to substantially the same obligation which would have rested upon a private owner of the land and stream, who had undertaken to interfere with the water course, in the same way. *Brown* v. *The Cayuga & Susquehanna R. R. Co.*, 12 N. Y. 486 ; *Cott* v. *The Lewiston R. R. Co.*, 36 ib. 214.

The charter gave authority to construct a bridge over the stream in question ; but the requirement to restore the stream so crossed to its former state, or in a sufficient manner not materially to impair its usefulness, made it the duty of the company exercising the franchise or privilege to construct the bridge in such manner that the water should not be obstructed, pent up, or otherwise caused thereby to overflow lands of riparian proprietors; and it was not only their duty to so make the bridge, but to keep it in such condition that it should not cause an obstruction of the stream to the injury of riparian owners. The alleged breach of that duty, and the consequential injury of appellee's lands, constitute the basis of this action.

But it is insisted by appellant's counsel, that inasmuch as the nuisance, if any there was, was created by the Peoria & Bureau

Valley Company and the Chicago & Rock Island Company, the appellant, therefore, occupies the position of a grantee whose grantor had created a nuisance, and cannot be held liable without notice and request to abate; that the court below refused to so instruct the jury, hence there is error. This position is not sound. We have attempted to show that the statutory duty of restoring the stream crossed, attached, and that it was a continuing duty. Now, if it attached and was a continuing duty so far as the Peoria & Bureau Valley Company were concerned, what has happened to relieve from, or dispense with, its performance? We have been referred to no statute, and we are aware of none, which purports to do any such thing. The corporation upon which it was imposed, and its lessee, the Chicago & Rock Island Company, form the component parts of the appellant corporation. When a new corporation is formed by amalgamation, under the authority of the State, of two or more distinct corporations into one, such new corporation succeeds to all the faculties and rights of the several components, and must, as a necessary consequence, be subject to all the conditions and duties imposed by the law of their creation, except so far as it may be otherwise provided by the act under which such consolidation is effected. From this view it follows that the statutory duty thus imposed upon one of the components of appellant is devolved upon the latter by virtue of the amalgamation, and it also follows that the doctrine of *Penruddock's case*, 5 Rep. 100, and other cases maintaining the same view, has no application, because appellant occupies no such position as that of a grantee whose grantor was the wrong-doer in creating a nuisance, because appellant is an artificial being, composed of two other artificial beings, the latter, as the evidence tends to show, being the tortfeasor as to the original construction of the bridge. Appellant, being composed of the original wrong-doers, and chargeable with the same duty which they violated, is in no position to insist upon notice of such breach, and request to perform the duty.

The authorities are not uniform as to the necessity of notice to one who continues a nuisance, it being a rule of the common law that every continuance of a nuisance is, in judgment of law, a fresh nuisance. See opinion of Denio, J., in *Brown* v. *The Cayuga & Susquehanna R. R. Co.*, above cited. But, besides the conflict of authority as to the doctrine contended for, and its inapplicability to such a case as this, the record shows that notice was given.

Numerous other points are made, and questions attempted to be raised, too numerous to admit of specification. Many of them are scarcely specious. As an instance : A question is raised about the improper exclusion by the court of the testimony of experts. When we come to look at the matter for the purpose of determining whether any rule of evidence has been violated, what do we find? Any distinct offer to prove certain things? No. We find counsel have enumerated six witnesses, and then collected ten questions alleged to have been asked these several witnesses, but variant in form, phraseology and object, and without singling out any, ask us to pass upon the collection with the view of ascertaining if some of them should not have been answered. This is not a proper mode of raising questions as to the competency or admissibility of evidence for review in this court. An offer should be made in such form as to involve the principle contended for. To go through with these ten questions, one by one, would of itself extend an opinion beyond proper bounds. Counsel operate a drag net, but ask the court to do the sorting. Many rules have become established whose sole policy was the convenience of courts. So far as we can discover, there was no error in the collection. Some of the questions had been substantially answered in response to others. Others are improper in form, because, failing to embody facts hypothetically, they directly call upon the witness to put himself in the place of the jury and pass upon the whole issue.

The merits of this case seem to us to be clearly with the

67—75th Ill.

appellee. There is no ground for dispute that, leaving the old piles in the bed of the stream when constructing the new bridge was positive misfeasance. These old stubs in connection with the new piles made obstruction almost a certainty. The use of the bridge by appellant, composed as it was of the original wrong-doers, and subject to a continuing duty to restore the stream to its former state, made appellant liable. Nor do we see any reason for disturbing the verdict for excess of damages. There is no indication of passion or prejudice in the amount, and we cannot say that it was not fully warranted by the evidence. Upon the whole case, we think the judgment ought to be affirmed, and it is accordingly done.

*Judgment affirmed.*