WALTER PALMER, etc., Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, October 19, 1909.

1. **RAILROADS: Negligence: Contributory Negligence: Demurrer to Evidence: Plaintiff Entitled to Inferences.** In an action for personal injuries caused by a collision between a railroad engine and a buggy plaintiff was driving, in determining whether or not a demurrer to the evidence should be sustained on the ground that plaintiff's own negligence contributed to the accident, plaintiff is entitled to all inferences the jury might properly draw regarding the facts.

2. ———: ————: ———: **Question for Jury.** A buggy driven by plaintiff was struck at a road crossing by a railroad engine, resulting in injury to him. The top of the buggy was up and the curtains were down. The night was very dark, it was raining hard and a strong wind was blowing the rain into plaintiff's face. A witness, who was driving immediately behind plaintiff, heard the rumble of the train, which he judged to be half a mile distant. From the edge of the right of way, which was forty-seven feet from the track, an unobstructed view up the track in the direction from which the train was approaching (west) could be had for a distance of twelve hundred and seventy-five feet. Plaintiff testified that when he reached the right of way he rose to his feet, looked out of the buggy to the west, still standing until the horses reached the track, drove the team in a walk to the track, and did not see nor hear the approaching train. There was evidence tending to prove that no headlight was burning on the engine, and the engineer testified the night was so dark he could not see further than the front of his engine, and did not see the buggy or team or hear the collision. *Held*, the question whether or not plaintiff was guilty of contributory negligence was for the jury.

3. ———: ———: ———: **Witness: Testimony Opposed to Physical Facts: Question for Jury.** Plaintiff's testimony that he looked and listened, but did not see nor hear the approaching train, cannot be disregarded on the ground circumstances show it cannot be true, inasmuch as the state of the weather prevented one from seeing, and, moreover, under the evidence, it might be inferred no lamps were burning, and the noise of the wind and rain would tend to drown the rumble of the train.

4. **INSTRUCTIONS: Refusal: Covered by Other Instructions Given.** Where several instructions presenting an issue in its various phases are given, the refusal of an instruction on the same issue is not error, even though it be a sound charge.

5. **RAILROADS: Instructions: Contributory Negligence: Imminent Peril: Failure to Pursue Particular Course.** In an action for personal injuries resulting from the collision of a railroad engine with a buggy plaintiff was driving, an instruction which charged the jury that if plaintiff sat back in the buggy just as the horses stepped on the track and made no further effort to see or hear the approaching train, and that if he had looked and listened long enough he could have seen the train, and could have gotten over safely, he was guilty of contributory negligence, was properly refused. The court had no right to tell the jury it was contributory negligence not to have pursued that particular course, inasmuch as the emergency of the peril may have been so imminent and terrifying as to excuse him for failing to adopt the very best expedient possible.

6. **PLEADING: Petition: Construction: Action on Foreign Statute or at Common Law.** A petition, in an action for personal injuries, alleged that the railroad on which the accident occurred was operated by a lessee company; that both the lessor and the lessee were Illinois corporations, merged and consolidated, "under and in accordance with the laws of the state of Illinois," that the defendant is the consolidated corporation; and that defendant became liable to be sued in this action "under the laws of the State of Missouri." *Held*, that the petition does not count on any statute of Illinois imposing a liability on the consolidated corporation, but counts on a common law liability, the averment with respect to the provisions of the laws of Illinois being made merely to show the authority for the consolidation.

7. **CORPORATIONS: Consolidated Companies: Liability for Torts of Constituent Companies.** A consolidated corporation is liable for the torts of the constituent companies, whether it is an entirely new corporation, or one of the old companies has absorbed the other.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*John D. Orear* and *Scarritt, Scarritt & Jones* for appellant.

(1) The demurrer to the evidence should have been sustained. (a) If it should be conceded that plaintiff sustained the burden of proof to the effect that the statutory crossing signals were not given as the train in question approached the crossing in question, still plaintiff would not be entitled to recover if it appears that he could have either seen or heard the train by carefully looking and listening as he approached and went over the crossing. Stepp v. Railroad, 85 Mo. 235; Moberly v. Railroad, 17 Mo. App. 543; Donnell v. Railroad, 27 Mo. App. 205. (b) Our Supreme Court has on several occasions held that where the country is level and the view practically unobstructed the presumption is that one who is injured

by a collision with a train at a public crossing was himself guilty of negligence. Kelsay v. Railroad, 129 Mo. 374; Hayden v. Railroad, 124 Mo. 566; Payne v. Railroad, 136 Mo. 562; Lane v. Railroad, 132 Mo. 4; Sanguinette v. Railroad, 196 Mo. 494. (c) The evidence in the case at bar as to the physical conditions surrounding the crossing and also to the effect that the train in question could have been' seen and could have been heard by plaintiff if he had used reasonable care to see or hear the same was clear and wholly undisputed. Under such circumstances the question of the conduct of the plaintiff becomes one of law for the court. Davies v. Railroad, 159 Mo. 1; Buesching v. Gas Light Co., 73 Mo. 229. (d) The following are cases where a traveler on. the public road has had a collision with a railroad train in the night and where it was held that there could be no recovery because of the contributory negligence of the traveler. Mackowik v. Railroad, 94 S. W. 256, opinion by LAMM, J.; and Lane v. Railroad, 132 Mo. 4, opinion by SHERWOOD, J. The following are recent "crossing" cases in which it was held that the traveler on the public road was debarred from recovery by reason of contributory negligence. Stotler v. Railroad, 204 Mo. 619; Walker v. Railroad, 193 Mo. 453; Porter v. Railroad, 199 Mo. 82. The negative testimony of one witness, situated as he was, as to the headlight is of no probative value and is no contradiction of the four witnesses who swore positively that the headlight was burning. In Bennett v. Railroad, 122 Mo. App. 710; Cathcart v. Railroad, 19 Mo. App. 118. (2) The court erred in refusing to give defendant's requested instruction No. 3. Hook v. Railroad, 162 Mo. 582; Kelsay v. Railroad, 129 Mo. 372; Moberly v. Railroad, 98 Mo. 187. The court erred in submitting to the jury in plaintiff's instruction No. 1 the question as to whether or not the defendant company was liable for the acts of the Chicago & Alton Railway Company, which was shown

to have operated the train in question. In the first place that was a question of law, and it is improper to submit a question of law to a jury. Zuwault v. Air Line, 71 Mo. App. 670; Stewart v. Clinton, 79 Mo. 614; Fraysher v. Railroad, 66 Mo. App. 573. In the second place there was no evidence to support a finding thereon, because the plaintiff did not offer in evidence the law of Illinois under which it conclusively appears that defendant company was incorporated and under which the alleged consolidation of railroad companies took place. (3) This defendant was not shown to be liable for this accident. It was not operating the train. The petition alleges that this accident occurred on September 9, 1905, and that at said time this railroad and the train in question were being operated by the Chicago & Alton Railway Company, a corporation organized under the laws of the State of Illinois. It is further alleged that defendant company is a corporation of the State of Illinois. It is further alleged that the Chicago & Alton Railway Company was consolidated with another company and merged into and absorbed by the defendant company "under and in accordance with the requirements of the laws of the State of Illinois," and it is further alleged that the new and "consolidated company is the Chicago & Alton Railroad Company, the defendant herein." Plaintiff did not offer in evidence the laws and statutes of the State of Illinois under which it was alleged that the Chicago & Alton Railway Company was merged into the defendant company. The courts of this State will not take judicial notice of or indulge in any presumption as to what is the statutory law of another State. It will not be presumed that the State of Illinois has a statute similar to any statute of this State. Nenno v. Railroad, 105 Mo. App. 540; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516; Morrisey v. Ferry Co., 47 Mo. 521; Crouch v. Railroad, 42 Mo. App. 248. The court cannot determine the liability or non-liability

of the defendant in this case for the acts of the Chicago & Alton Railway Company without having properly before it the statutes of Illinois governing railroads. Whether the consolidation of two corporations works a dissolution of both and creates a new corporation must depend upon the statute under which the consolidation takes place and the intention therein manifested. Railroad v. Georgia, 92 U. S. 665. A new company formed by consolidation is not liable for the acts and debts of an old company unless rendered liable by the act under which the consolidation took place. Shaw v. Railroad, 16 Gray (Mass.).

*Brewster, Ferrell & Mayer* and *Fry & Rodgers* for respondent.

(1) Under the evidence, the question of plaintiff's contributory negligence was clearly a question for the jury. Three witnesses testified that no signals were given and no headlight showing. Kennayde v. Railroad, 45 Mo. 257; Erickson v. Railroad, 171 Mo. 660; Frank v. Transit Co., 99 Mo. App. 326; Esler v. Railroad, 109 Mo. App. 580; Huckshold v. Railroad, 90 Mo. 552; Gratiot v. Railroad, 16 L. R. A. 189; Judson v. Central Vermont Co., 53 N. E. 515; Lang v. Railroad, 115 Mo. App. 498; Montgomery v. Railroad, 181 Mo. 504; Powers v. Transit Co., 202 Mo. 267; Eckhard v. Transit Co., 190 Mo. 609; Riska v. Railroad, 180 Mo. 179. (2) There was no error in refusing defendant's instructions number 3. The question of contributory negligence was fully covered by defendant's given instructions. "Where the jury are properly instructed on all the issues no error is committed in refusing any number of requests for instruction, however well drawn. Flynn v. Railroad, 43 Mo. App. 436. Instruction number 3 was erroneous in singling out certain facts in the case and giving undue prominence to them. Spohn v. Railroad, 87 Mo. 81; Tribbe v. Kamp, 154 Mo. 583. (3)

Defendant is liable for damages done plaintiff if the Chicago & Alton Railway Company was liable. R. S. 1899, sec. 1059; Karn v. Railroad, 114 Mo. App. 166; Leavenworth v. Railroad, 134 U. S. 696; Southgate v. Railroad, 61 Mo. 93; State ex rel. v. Lenier, 145 Mo. 322; State ex rel. v. Keokuk, 99 Mo. 41; Kenion v. Railroad, 39 Mo. App. 582; Lighting Co. v. Hobart, 98 Mo. App. 230; Black v. Railroad, 110 Mo. App. 198. (3a) The defendant, Chicago & Alton Railroad Company, being the consolidated Chicago & Alton Railroad Company and the Chicago & Alton Railway Company, is liable for the damage caused plaintiff, before the consolidation, by the Chicago & Alton Railway Company. The petition alleges a consolidation under the laws of Illinois; there was no allegation as to any statute of Illinois in either the petition or the answer; therefore, if the liability of defendant is not determined by the Missouri statute (and respondent believes the liability is determined by the Missouri statute) it must be determined by the common law. At common law a corporation formed by the consolidation of two or more companies succeeds to all of the property of the old corporations, without any conveyances, and, it also succeeds to all of the liabilities of the old corporations. Kinton v. Railroad, 39 Mo. App. 574; Kinton v. Railroad, 39 Mo. App. 382; Thompson v. Abbott, 61 Mo. 176; Evans v. Railroad, 106 Mo. 594; 1 Elliott on Railroads (2 Ed.), sec. 334; 2 Morawetz on Priv. Corp., sec. 956; Railroad v. Prewitt, 134 Ind. 557; Cashman v. Brownlee, 128 Ind. 266; Railroad v. Boney, 117 Ind. 501; Berry v. Railroad, 52 Kan. 774; State use of Dodson v. Railroad, 77 Md. 489.

GOODE, J.—Plaintiff is a negro boy who sues by his next friend for a personal injury received in a collision of a locomotive of the defendant company with a buggy in which plaintiff was driving. The accident happened on the night of September 9, 1905, after mid-

night, and at a crossing which is near but east of the abandoned station of Larrabee. This plaintiff worked on a farm five or six miles northeast of Larrabee. One Saturday evening he and another negro boy drove from the farm where plaintiff lived to the town of Sturgeon, seven or eight miles southwest of Larrabee and about twelve miles southwest of where plaintiff lived. He visited his father and mother in Sturgeon, attended a social gathering at a church and perhaps loitered about a saloon. He may have been intoxicated, but much of the evidence looks like he was not. He and his companion started for home about midnight in a buggy drawn by a team. Behind them were two white men, farmers in the vicinity, of the names of Devert and Palmer. A third negro boy accompanied the men in the buggy, riding a horse belonging to one of them. The occupants of the second vehicle had nothing to do with plaintiff and his companion, but the members of the two parties seem to have been acquainted, and to have passed a few words now and then when the buggies happened to come close enough to each other for conversation to occur. Plaintiff Palmer and his companion were in advance of the other buggy and continued to be. They drove along about seven miles until they drew near Larrabee station and near to the crossing of the road they were on and the railroad at a point some distance east of the station. The country about there is level and the railroad track runs due east and west. The wagon road on which plaintiff was driving proceeds in a northeasterly direction until it is one hundred and fifty yards south of the railroad crossing, and there branches, one fork leading to the north and another, a wagon road, going eastwardly. At this point one of the men in the rear buggy, R. L. Palmer, got out and mounted his horse to travel east alone, his companion, Devert, intending to go on north in the buggy. The third negro boy, who had been riding the horse, relinquished the animal to its owner

Palmer and got into the buggy with Devert. This
white man Palmer should not be confused with the
plaintiff. What is material about the incident at the
fork of the road is that the white man Palmer testi-
fied he there heard a rumble, thought of the approach
of a train and warned Devert to look out for it as he
(Devert) drove on toward the crossing. Palmer said
he could not see the train. There was a hedge along
the west side of that part of the country road extend-
ing to the right of way, and it is conceded this hedge
would obstruct the view of a person driving northward
until he entered the right of way; but the evidence tends
to show the view was unobstructed by the hedge from
thence to the track, a distance of forty-seven feet, and
that after getting on the right of way, no obstruction
of vision intervened to the west of the crossing, ex-
cept a wing fence three or four feet high and some cat-
tle chutes one hundred and sixty yards further west.
Plaintiff testified when he reached the right of way
he rose to his feet, looked out of the buggy, still stand-
ing until the horses reached the track, drove the team
in a walk to the track, when the engine struck the
buggy, hurled it and plaintiff one hundred feet or more
up the track and killed his companion. The horses
were found hitched to the wagon pole further north
on the wagon road. He testified that though he was
looking to the west he neither saw nor heard the ap-
proaching train and never knew what hit him. The
neglect alleged was failure to sound crossing signals.
The top of the buggy was up and the curtains down,
the night was wild and very dark, it was raining hard
and a strong wind was blowing from the north which
drove the rain into the faces of the occupants of the
buggy. The railroad track was two feet above the sur-
rounding country, it was upgrade from the crossing
towards Larrabee, and ordinarily a train coming from

142 App—41

the west would be visible from the crossing for a long distance. When the witness Palmer heard the rumble of the train he judged it was a half-mile west, and another witness said that from observations he had made, a train might be seen from the crossing clear to Clark, five miles away, and from the edge of the right of way would be visible to a person sitting in a buggy twelve hundred and seventy-five feet away, or at the water tank. The train was a short one, consisting of an engine, tender and caboose, and was running, the engineer said, at a speed of thirty-five miles an hour. He testified there was a lighted headlight on the front of the engine, but there was testimony tending to prove the contrary. The engineer said the night was so dark he could not see further than the front of his engine, did not see the buggy or team, hear the collision, or become aware he had struck anything until he found portions of the buggy on the front of the engine when he reached Mexico, twenty miles from the place of the accident. The evidence tended strongly to prove no bell was rung or whistle sounded as the engine approached the crossing, and it is conceded the finding of the jury for plaintiff settled this issue of fact. The company operating the road at the time of the accident was the Chicago & Alton Railway Company; but this action was instituted against the Chicago & Alton Railroad Company, it being alleged the latter, on September 10, 1905, was the lessor to the Chicago & Alton Railway Company of the railroad track and right of way mentioned; that on or about March 8, 1906, said two railroad companies were consolidated pursuant to the provisions and requirements of the laws of the State of Illinois, and all their capital stocks, corporate rights, franchises, immunities and privileges of every kind passed by the consolidation and merger to the Chicago & Alton Railroad Company, the defendant herein, which since said date is and has been the owner and possessor of all the railroad property and operat-

ing the same, and has become and is liable for the debts and liabilities of both the companies. There was evidence to prove those statements. The answer was a general denial and a plea of contributory negligence. The defendant requested the court to direct a verdict in its favor at the conclusion of the evidence, and for the refusal of this and certain other rulings on requests for instructions, says the judgment in plaintiff's favor given pursuant to the verdict of the jury, ought to be reversed.

1. A persuasive argument has been made against plaintiff's right to a verdict, on the theory that the evidence proves his own negligence contributed to the accident, which argument is to be considered in connection with plaintiff's right to the benefit of all inferences the jury properly might draw regarding the facts. [Montgomery v. Railroad, 181 Mo. 504.] If we accept plaintiff's testimony, he was perfectly careful as he approached the track, both in respect of looking and of listening for a train; but counsel say his testimony must be disregarded because circumstances show it cannot be true; that therefore the question is for the court. [Sanguinette v. Railroad, 196 Mo. 464.] It is said there were green lights on the sides of the engine and a coal oil headlight was burning, and plaintiff must have seen some of those lights as he approached the track, if he was standing up in the buggy and looking and listening for a train, as he swore; that the man Palmer heard the train when he got out of the buggy to mount his horse at the fork of the wagon road, and shouted a warning to Devert; thus proving it was possible to hear the train and that plaintiff must have heard it, since he was nearer the track than said witness. If those facts were undisputably true and stood alone, they would be convincing against the truth of plaintiff's testimony, but they are to be weighed with other matters in proof. The witness Palmer testified

to the best of his knowledge there was no headlight on the locomotive; that he saw none. Counsel for defendant account for this statement by saying the headlight was a coal oil lamp set back in a lantern, did not throw much light ahead and was invisible to the witness Palmer because he was too far to one side; whereas plaintiff was close enough to see it. They also say a glare was cast every few seconds when the fireman opened the fire box of the engine to put in fuel. The degree of brilliancy of this glare, and whether or not it was thrown at a time when plaintiff could have seen it if he had been looking, are left indefinite. Neither is there testimony as to how brilliant the green lights were on the sides of the engine, or how far they could be seen through the thick weather of that night. It looks like plaintiff could only have seen the one on the south side as he drove northward; and considering the state of the weather, we cannot say as a matter of law he was bound to see this lamp, or, indeed, any of the alleged lights about the locomotive, had he been attentive. Moreover, the jury fairly might infer there was no headlight burning, and might find there was no glare from the fire box of a kind to warn plaintiff as he approached the track. We do not feel authorized to hold otherwise, in view of the engineer's statement that the illumination cast by the headlight failed to reveal to his gaze the buggy and team on the track. If this statement is true, the condition of the atmosphere prevented lamps from shining far. We are much impressed by the testimony of the engineer that he could not see ahead of the locomotive.

The witness Palmer said he heard the rumble of the train after he got out of the buggy and had not heard it before. Devert, who remained in the buggy, did not hear it until Palmer spoke about it. A blast from the whistle or ring of the bell might have reached plaintiff when the rumble of the train would not. The noise of the wind and rain, and especially the patter

of the rain on the top and sides of the buggy, would tend to drown the rumble. It is significant that neither the engineer or fireman in the cab, nor the conductor or a brakeman in the cupola of the caboose, saw or heard the collision. The reasoning against plaintiff's right to recover strikes us as inconclusive and, on the whole, we think the question of his contributory negligence was for the jury. It is useless to discriminate the numerous cases dealing with similar contentions, as each case stands on its own facts and we have found no precedent for denying redress as a court matter on such facts as are here.

2. Error is assigned on the refusal to instruct that it was the duty of plaintiff carefully to look and listen for an approaching train at the crossing; that this duty was positive and continuous until he had passed over the crossing in safety, and if the jury believed he sat back in the buggy just as the horses stepped on the track, and made no further effort to see or hear an approaching train, and believed if he had listened and looked long enough he could have seen the train, and could have whipped up the horses and gotten over safely, he was guilty of contributory negligence. Seven or eight instructions advising the jury plaintiff could not recover if his negligence contributed to the accident, and presenting the issue in its various phases, were given; and these sufficiently informed the jury on this issue to render the refusal of the instruction in question harmless, even if it was a sound charge. It was not sound; for it took for granted the duty was incumbent on plaintiff to whip his horses across the track upon the discovery of a train near him, if thereby he could have escaped; and that if he failed to do so, he could be cut out of a verdict. The court had no right to tell the jury it was contributory negligence on plaintiff's part not to pursue that particular course, even though thereby he could have saved himself. The emergency of the peril may have been so imminent and ter-

rifying as to excuse him for failing to adopt the very best expedient possible under the circumstances. [Donahue v. Railroad, 91 Mo. 357; Kleiber v. Railroad, 107 Mo. 240.]

3. At the date of the accident the railroad and a train of cars were operated by the Chicago & Alton Railway Company under a lease from the Chicago & Alton Railroad Company. Both were Illinois companies and subsequently they consolidated under the name of the Chicago & Alton Railroad Company, this defendant. The point is raised that defendant is not liable for the tort of the Chicago & Alton Railway Company, the former lessee, and did not become liable in consequence of the consolidation. The petition says the two original companies, the Chicago & Alton Railway Company and the Chicago & Alton Railroad Company, united, merged and consolidated on March 8, 1906, "under and in accordance with the requirements of the laws of the State of Illinois . . . and the corporate name of the consolidated company is the Chicago & Alton Railroad Company, the defendant herein." We think the words "under and in accordance with the laws of the State of Illinois," were intended by the pleader to designate the statutes of Illinois; and, indeed, the articles of consolidation introduced by plaintiff show, in the concluding clause of article 7, the consolidation was under a statute. But the averment regarding the requirements of the laws of Illinois was made to show authority for the consolidation, and not for the purpose of counting on a liability imposed on the consolidated company by these laws (statutes) for the torts of the constituent companies. This conclusion is enforced by an averment further down in the petition that the defendant became liable to be sued in this action "under the laws of the State of Missouri." Plaintiff did not allege a statute of Illinois which made defendant liable for the torts of one of the old companies, thereby making it incumbent on him to intro-

duce such a statute in proof of his allegation and precluding him from recovering at common law as the petition stood. In the absence of proof of a controlling statute, the question must be disposed of according to common law and by the weight of authority in Illinois and generally this makes the defendant liable. [Chicago, etc., Railroad v. Ashling, 160 Ill. 373, 52 Ill. App. 327.] This is true whether the consolidated company was an entirely new corporation or one of the old companies absorbed the other. The first clause of the articles of consolidation said the consolidation should be "effected by consolidating and merging all and singular the property and franchises of the party of the first part into the party of the second part," and the second clause said the name of the consolidated company should be the Chicago & Alton Railroad Company. The old Chicago & Alton Railroad Company was the party of the first part in the Articles, and the Chicago & Alton Railway Company was the party of the second part. Hence it looks like the consolidation was affected by merging the property and franchises of the old Railroad Company in the Railway Company and giving the latter the former's name. However we consider this point immaterial, because if the Chicago & Alton Railway Company remained in existence and absorbed the former Chicago & Alton Railroad Company, as the Railway Company was actually operating the line when plaintiff was hurt, it would, of course, be liable. If the consolidated company was a new corporation, it is liable for the torts of the constituent companies. [Chicago, etc., Railroad v. Moffitt, 75 Ill. 524; Railroad v. Jones, 29 Ind. 425; Columbus, etc., Railroad v. Powell, 40 Ind. 37; Cleveland, etc., Railroad v. Prewitt, 134 Ind. 557; Sappington v. Railroad, 37 Ark. 23; Baer v. Railroad, 52 Kan. 774; 1 Elliott, Railroads, secs. 329, 334, and cases cited in notes; and see note to Atlantic, etc., Railroad v.

Johnson, 11 L. R. A. (n. s.), where the cases dealing with this question are collected.]

We cannot know the fact judicially, but a statute of Illinois provided the new company should be liable (Hurd's R. S. Ill. 1905, p. 510, sec. 65; Chicago, etc., Railroad v. Ashling, 160 Ill. 373). Though the seventh clause of the Articles of Consolidation does not cite the statute, it retains the liability of the consolidated company in the statutory language. Said clause of the Articles reads: "As provided in the statute in such case made and provided, this consolidation shall not affect suits pending in which such consolidating corporations shall be parties, nor affect causes of action, nor the rights of persons, in any particular." Maybe that recital is sufficient proof of the statute. As to that we do not say, but hold defendant is answerable regardless of a statutory liability, and that the petition does not declare on the latter.

The judgment is affirmed. All concur.