**Owen J. Burns, Appellee, v. Bertha Salyers, Appellant.**

**Gen. No. 8,701.**

Opinion filed January 16, 1933. Rehearing denied April 5, 1933.

W. A. Doss and CARL I. GLASGOW, for appellant.

COTTON & NICHOLS, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This suit was instituted by Owen J. Burns, appellee, against Bertha Salyers, appellant, as a result of a collision between an automobile driven by a son of appellee and one driven by appellant. The collision occurred on what is known as State road number ten of this State, about three miles north and east of the City of Monticello, Piatt county, at 1:30 o'clock p. m., October 31, 1931. The son of appellee was driving appellee's Buick four-door sedan automobile and was coming in a southerly direction, while appellant was driving her husband's automobile and going in a northerly direction. On a trial by jury a verdict was obtained against appellant for $508.33.

In the front seat, riding with his son, was appellee, while in the rear seat were Irene, a daughter, 18 years old; Tom, a son, 12 years old; and Genevieve, a daughter, 10 years old.

Riding with appellant in the front seat of her husband's Cadillac automobile was her 10-year-old daughter. No other persons were in this car.

Appellee's contention is that at the place of the collision the road is not on any curve and is practically straight for some five or six hundred feet, affording a clear view; while appellant contends that there is a

substantial and dangerous curve going up a hill and around this curve the view is greatly obstructed. There is no substantial controversy at all as to the place where the actual collision occurred on the pavement as regards the place thereon from a northerly and southerly direction, but there is a dispute on which side of the center of the pavement it occurred. Appellant contends that the cars came into contact on the east side of the black center line of the pavement at least about 11 inches, while appellee contends that the collision occurred about a foot on the west side of the center of the black line.

Appellant offered, but the court refused to admit in evidence, a plat of the pavement and surrounding points, made a day or two after the accident by one Bower, surveyor of Piatt county.

Appellee's son was driving appellee's car in a southerly direction and at a rate of speed of 35 to 45 miles an hour when he came upon a farm wagon loaded with coal, pulled by a team of horses driven by witness Darwin Musick, going in a southerly direction also on the west side of the center of the pavement, up a hill and around the curve on which the collision occurred. When appellee's car went from the west side of the pavement to the east side of the pavement to pass around the wagon and team, but before appellee's car had passed the team and got on the west side of the black line and center of the pavement, the collision occurred with appellant's automobile, which was traveling in a northerly direction on the east side of the black line and center of the pavement. The collision occurred by the left front part of appellant's automobile striking the left front part of appellee's car.

The result of the collision was that appellant's automobile traveled along in a northerly direction on the east side of the center of the black line for about 20 feet, and moved backwards down into a ditch on the

east side about 10 feet east of the east line of the pavement with the car coming to rest in a westerly direction. Appellee's car traveled in a southerly direction, slid over to the west side of the pavement and off of the pavement on the west side shoulder thereof. It ran along on the ground parallel with the west edge of the pavement for a distance of 77 feet, turned over on the way and slid on its side practically all of the way, tearing up the earth and knocking down guide posts.

Appellee's car was torn to pieces and the occupants thrown in various directions from the car, but none of the occupants was seriously injured.

Appellant's car was damaged. The left front wheel was crushed, the tire was burst and the end of the left front side of the bumper was cut off or doubled over.

Appellee obtained a judgment against appellant for $508.83 and appellant has brought the record, by appeal, to this court for review.

The principal assignment of error is based upon the court's refusal to admit in evidence three photographs, a plat and drawing. The witness was placed in one of the photographs by one of appellant's counsel at a point where it was claimed by appellant that the cars came together. In the second photograph the witness was placed at the spot where it was claimed by counsel the hind wheel of appellant's car went into the ditch; and in the third the witness was placed where it was claimed the tire on appellant's car skidded on the hard road. These photographs were taken on the day following the accident and the witness was the driver of the wagon which both cars passed at the time of the accident. The drawing was an engineer's map of the road, purporting to show by lines the paths and operation of the cars upon the highway at the time of the accident. It was caused to be drawn and produced under the supervision of one of appellant's counsel. Upon objection by appel-

lee, the court refused to admit these exhibits in evidence after the testimony was produced outside of the presence of the jury as to the source and nature of the proofs.

Appellee, to sustain this ruling, relies upon *Chicago & E. I. R. Co. v. Crose,* 214 Ill. 602; *Ellis v. Flannigan,* 253 Ill. 397; *Grant v. Chicago & N. W. R. Co.,* 176 Ill. App. 292, and *Nunnelley v. Muth,* 195 Ky. 352, 242 S. W. 622; same case 27 A. L. R. 910. The Illinois court, in *Grant v. Chicago & N. W. R. Co., supra,* held:

"In the case of *Chicago & E. I. R. Co. v. Crose,* 214 Ill. 602, it is said that photographs offered in evidence for the purpose of contradicting witnesses or explaining a transaction are only competent when they are shown to have been so taken as correctly to exemplify the actual situation, circumstances and surroundings at the time. 'When the situation and surrounding circumstances are subject to change, photographs, to be of any value as evidence, must be shown to have been taken at the time when the situation and surroundings are unchanged.'

"Plaintiff had no power to cause like pictures to be taken; he had no control over the engine and cars, and no one representing him was present at the time the pictures were taken. He did not have (to make use of language similar to that employed in the case of *Lake Erie & W. R. Co. v. Wilson, supra*) opportunity to offer evidence as to whether the pictures correctly represented the situations as they were severally presented. The record bears out the statement of defendant's counsel that it was admitted by both parties that an engine and train of cars stood just north of the north sidewalk on Lincoln Avenue; that plaintiff's witnesses claimed that this engine and train of cars were about ten feet north of said sidewalk, and that defendant's witnesses stated that the engine and train of cars stood thirty feet north of said sidewalk. It

was not admitted, however, by the plaintiff that when the two sets of pictures were taken the engine and train of cars were placed respectively about ten feet north of the sidewalk and thirty feet north of the sidewalk. Defendant's station agent testified that they were so placed, but the plaintiff had no means of ascertaining the accuracy of this statement.

"In the case of *Ellis v. Flannigan*, 253 Ill. 397, it was sought to corroborate the testimony of a witness (that the testatrix of a will when sitting in a certain chair could not, by turning her head and body, see any object which was directly behind her) by showing a photograph of the room taken four weeks after the death of the testatrix. The photograph showed the table and the chair in which the testatrix sat, arranged, as the witness testified, in the relative positions which they occupied on the day the will was attested. The witness was the sister of the contestant of the will, and testified that the latter assisted her in arranging the furniture in the position she claimed each piece occupied on the day of the execution of the will. It was held that, made under these circumstances, the photograph was improperly admitted. As we understand the case, the fact that the witness was a sister of the contestant could have been important only as showing her interest in the matter. We do not understand (as has been suggested) the court in using the phrase 'under such circumstances' to base the decision merely upon the fact that the witness was a sister of contestant, and that the contestant assisted in arranging the scene, but upon the broader ground of lack of equal opportunity, as more fully discussed in *Chicago & E. I. R. Co. v. Crose, supra.*"

In 27 A. L. R. at page 910, the case of *Nunnelley, Admr. of Clifton Porter Nunnelley, deceased, v. Pierre Muth et al.*, is reported. This was an action for personal injuries and photographs were taken at the in-

stance of a witness to show his recollection of the location of moving objects involved in the accident. Without going into great detail as to the facts of the case, we quote from the opinion, beginning on page 911, as follows:

"Parker visited the scene of the accident with a photographer before his deposition was taken, and indicated to the photographer his conception of the respective locations of Nunnelley's machine and the truck at the time that Clifton Nunnelley first became visible to the driver of the truck. He also indicated his own location on the pike with respect to the point of accident. Photographs were taken showing machines at these locations, also showing a man on horseback where Parker claimed to have been, and a boy representing the deceased. These photographs were offered in evidence. The trial court rejected them, and the argument is made that the ruling was erroneous.

"The competency of the photographs is insisted upon, on the idea that they were shown to have been accurately taken and developed, and that they portray, according to Parker's recollection, the location of the moving objects at the time the boy could first have been seen by the driver of the truck. Upon that hypothesis it is argued that they are certainly as competent as the testimony of the witness himself, and that their admission in evidence would have aided the jury in determining the situation of the parties immediately preceding and at the time of the accident. Numerous decisions from other jurisdictions are cited, as approving the competency of this character of evidence, but many of the authorities relied on, including textbooks, pertain to photographs of the *locus in quo* or of permanent objects about the location of which there is no dispute. Photographs of the scene of the accident and of permanently located objects, shown to

be accurate, are admissible in evidence in this juris-
diction, on the ground that they enable the jury to ac-
quire a more intelligent understanding of the situation
than could be obtained from a verbal description by
the witnesses. But we have never held, where the
question was raised, that photographs taken to show
a witness's recollection of the location of moving ob-
jects are competent.

"The latest utterance of this court on the subject is
found in *Welch v. Louisville & N. R. Co.*, 163 Ky. 103,
173 S. W. 338, in which it was held that photographs
taken after the accident, showing the precise position
of a party at the time of the accident, are inadmissible.
The decision was based on the ground that a photo-
graph of that kind is self-serving and cannot be used
to corroborate a witness or to furnish evidence of the
position of the party at the time of the injury. This,
in our opinion, is sound, since the photograph does not
show the facts with reference to the location of the in-
jured party or other moving objects at the time of the
accident, but is merely an ocular demonstration of the
witness's conception of such locations. If such photo-
graphs were held competent, then every witness testi-
fying might introduce photographs of his conception
of the location of moving objects, and there would be
no end to the attempt to corroborate the witnesses by
what amount to self-serving statements."

It cannot be held as error that the court refused
admission of these exhibits. They were incompetent
and constitute what is termed "posed photography."

Other assignments of error are made, but none as
to the weight of the evidence.

Counsel for appellant seriously criticise the trial
judge for what they call "his unfair rulings" and then
proceed: "We have excepted to various instructions
refused by the court and offered by the Appellant, and
also excepted to various adverse rulings of the court

on points of evidence against Appellant, and are compelled to refrain now from going into details of each of these, even in a general way, simply because it is too expensive to take up a record of this character. We trust that the Appellate Court, in reading the entire record, will note these points as well as if we had attempted to add the expense to set forth each one of them in detail.''

In *Chicago City Ry. Co. v. Van Vleck,* 40 Ill. App. 367, at page 368 of the opinion, the court said: ''Several pages of objections and exceptions are practically pitch-forked in before the court, with the implied invitation that we look them over, examine the abstract, find out the connection in which each particular question arose, search out the materiality of evidence excluded, ascertain for ourselves the injurious operation or tendency of answers permitted, and say on the whole whether upon some one or more of the exceptions the verdict should not be overturned.

''We decline to enter upon the consideration of alleged errors thus bundled upon us. *C. R. I. & P. R. R. Co. v. Moffitt,* 75 Ill. 525.''

Again in *Chicago, R. I. & P. R. Co. v. Moffitt,* 75 Ill. 524, at page 529, the court states: ''Counsel operate a drag net, but ask the court to do the sorting.''

Finding in the record no error warranting a reversal, the verdict and judgment of the circuit court of Piatt county are affirmed.

*Affirmed.*