JOSEPH U. ZIMMERMAN, Appellant, v. W. L. GRUSH PRODUCE COMPANY, Respondent.

Kansas City Court of Appeals, May 15, 1911.

EQUITY: Fraudulent Conveyances. Where the purpose of a new corporation is not to continue in existence an old company, but to put into existence a new corporation with new stockholders, which did not take over the property of the old company, but bought it outright with the money of its shareholders, it is in no sense a continuation of the old company, and, in the absence of fraud in the transaction, the new company is not liable for the obligations of the old one.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*Stubbs & Stubbs* for appellant.

(1) The distinction is clearly drawn, in our authorities, between a preferred creditor who receives from an insolvent debtor enough goods to pay or secure his

claim, and a volunteer purchaser from such insolvent. The preferred creditor is protected, provided he does not further participate in the fraud of the debtor than by accepting the goods with knowledge of his fraudulent intention. But the volunteer purchaser will be compelled to disgorge the goods purchased from such insolvent, provided he knew of his fraudulent intention, even though he did not further participate in the fraud; for in his case the purchase with such knowledge is a participation in the fraud, ipso facto; and this is true even though he has paid full value for the goods. Kurtz v. Troll, 175 Mo. 506; distinguishing Sammons v. O'Neill, 60 Mo. App. 530; Monarch Rubber Co. v. Brown, 78 Mo. App. 55; Bank v. Fry, 216 Mo. 34; Gust v. Hoppe, 201 Mo. 300; Larrabee v. Bank, 114 Mo. 592; McDonald v. Hoover, 142 Mo. 484. (2) Taking over the assets of the old corporation, under these circumstances, was not a purchase at all. There was, in fact, no contract, no meeting of minds, no seller on one side and no buyer on the other. There was no separate entity or volition on the one side, opposed to a like entity or volition on the other. The same mind and will operated on both sides— if it may be said that there were two sides—in carrying out the one common purpose. There was only one will and purpose, and that was the will and purpose of Grush. (3) The purchasers who took stock, with full knowledge of the conditions existing and the results of thus lending their names (and possibly their money) to Grush, thereby put it in Grush's power to avoid and defeat his creditors, that is, the creditors of the old corporation; and hence, to that extent they participated in Grush's fraud. Balz v. Nelson, 171 Mo. 682; Bank v. Fry, 216 Mo. 46; Snyder v. Free, 114 Mo. 360; Larrabee v. Bank, 114 Mo. 592; McDonald v. Hoover, 142 Mo. 284; Rubber Co. v. Supply Co., 149 Mo. 538; Hall v. Goodnight, 138 Mo. 576. (4) It was not necessary for plaintiff to prove combination, or intentional, premeditated fraud. Fraud may be shown by circumstantial, as well as

by direct evidence. Snyder v. Free, 114 Mo. 360; Burgert v. Borchert, 59 Mo. 80; Balz v. Nelson, 171 Mo. 682; Van Raalte v. Harrington, 101 Mo. 602, 20 Cyc. 450; Baldwin v. Whitcomb, 71 Mo. 602; Seger's Sons v. Thompson, 107 Mo. 635; Gentry v. Field, 143 Mo. 399. Anything out of the usual and normal course of business is a sign and badge of fraud. Benne v. Schnecko, 100 Mo. 250, citing Bump on Fraudulent Conveyances, pp. 34, 42, 51 and Baldwin v. Combs, 71 Mo. 651; Van Raalte v. Harrington, 101 Mo. 602; Snell v. Harrison, 104 Mo. 158; Gentry v. Field, 143 Mo. 399. (5) While the old doctrine that the assets of an insolvent corporation are a trust fund for the payment of its debts has been in part receded from, still the doctrine is firmly fixed in the decisions of our courts, that such assets are a trust for the payment of debts, when traced into the hands of stockholders or of fraudulent transferees. In other words, such assets are always a trust fund for the payment of debts unless they have gone into the hands of bona fide purchasers. And courts of equity will follow them and apply them to the payment of debts. 10 Cyc. 288, 653, 655, 1256, 1257; Sidel v. Railroad, 78 Fed. 724; Williams v. Jones, 23 App. 132; Shields v. Hobart, 172 Mo. 491; Roan v. Winn, 93 Mo. 503; Mo. Lead Co. v. Reinhardt, 114 Mo. 218. (6) In an equity suit like this, to follow assets, to follow property fraudulently conveyed, if it appears to the Appellate Court that upon the evidence the decree ought to have been for the plaintiff as prayed for, the court will reverse and remand the case with directions to the trial court to render the proper decree. Gust v. Hoppe, 201 Mo. 300; Bank v. Fry, 216 Mo. 24; Baldwin v. Whitcomb, 71 Mo. 651; Benne v. Schnecko, 100 Mo. 250; Snell v. Harrison, 104 Mo. 158; Seger's Sons v. Thompson, 107 Mo. 635; Snyder v. Free, 114 Mo. 360; McDonald v. Hoover, 142 Mo. 484; Berry v. Rood, 168 Mo. 316.

*T. L. Carns* for respondent.

(1)    A sale made in good faith by an insolvent for the purpose of paying creditors is valid.  Gens, etc. v. D. G. Co:, 56 Mo. App. 245; Dougherty v. Cooper, 77 Mo. 528.  "To render a sale void as to creditors, the fraud intent must exist and the vendee have knowledge at the time of the sale."  Hill v. Taylor, 125 Mo. 331; Goresche v. McDonald, 103 Mo. 1.  While, as a general rule, the assets of the corporation are a trust fund for the benefit of its creditors, yet a corporation may dispose of the whole or any part of its assets for value and in good faith and the purchaser take such assets, discharged of any trust, in favor of the creditors of the selling corporation.  Warren v. Fertilizer & Junk Co., 145 Mo. App. 558.  The new company, defendant here, paid adequate; and the testimony tends to show, full consideration for the assets which it had received and took over.  The purchase price went into the hands of the stockholders of the old company.  If there was any fraud upon creditors, it was in the distribution of these assessments among the stockholders of the old company.  Neither they nor the representitives of the old company are before this court in this proceeding.  Warren v. Fertilizer & Junk Co., supra.    (2)    A debtor, whether solvent or insolvent, may prefer one or more of his creditors and to that end may, in good faith, by any suitable means appropriate the whole or any part of his property to the payment or part payment of his just debts to one or more of his creditors to the exclusion of the others.  Drug Co. v. White, 165 Mo. 136.  A debtor may give a preference to a particular creditor or set of creditors by direct payment or assignment, if he does so in the payment of their just demands, but not as a mere screen to secure the property to himself, and the pendency of the suit of another creditor is immaterial and the transaction is valid, though done to defeat that creditor's claim.   Shelley v. Boothe, 73 Mo. 74; Wall v. Beedy, 161

Mo. 625; Sammons v. O'Neill, 60 Mo. App. 530.    (3) Equity has no jurisdiction to compel a man to work for his creditors if he prefers to work for his wife and children and leave his honest debts unpaid.    Bank v. Adair, 172 Mo. 156.

BROADDUS, P. J.—This is a suit in equity to impound assets which are charged to have been transferred in fraud of creditors, in contravention of the statute against fraudulent conveyances as contained in sections 2880 and 2881, Revised Statutes 1909.

The special object of the action is to recover from the respondent the sum of twenty-five hundred dollars and interest and costs, being the amount recovered by the appellant in a suit brought by him against the W. L. Grush Produce Company.    It is charged in the petition that the plaintiff, in 1906, sued the W. L. Grush Produce Company for forty-five hundred dollars; that that company was a corporation organized and existing under the laws of Missouri with a capital stock of Ten Thousand ($10,000.00) Dollars, ninety-eight per cent of which was owned by W. L. Grush, and that he had absolute control of the remaining two per cent; and that on the 5th day of November, 1907, the plaintiff recovered a judgment against that corporation for twenty-five hundred dollars, which has not been paid; that prior to October 26, 1907, that corporation became insolvent and that W. L. Grush went into voluntary bankruptcy on October 28, 1907.    It is further charged that on about the 26th and 28th days of October, 1907, W. L. Grush, with the fraudulent intention to merge the W. L. Grush Produce Company into another corporation which might absorb and take over all assets and business and good will of the same, and that he intended to hinder, delay and defraud the creditors of that corporation, and especially the plaintiff, caused the respondent, W. L. Grush Produce and Commission Company, to be incorporated.

The petitioner states the names of the several incorporators and the number of shares subscribed by each, and charges that said incorporators, with knowledge of the fraudulent intent of said Grush and for the purpose of aiding him in such fraudulent scheme, permitted their names to be used in incorporating the respondent, and that none of said incorporators paid for their stock or become bona fide stockholders in the respondent corporation. It is further charged in the petition that on the 26th day of October, 1907, the W. L. Grush Produce Company executed a certain bill of sale to J. E. Chandler for the named consideration of nineteen hundred and thirty-five dollars, but that, as a matter of fact, Mr. Chandler paid nothing for said bill of sale and did not, in fact, purchase the property therein described; and that said corporation did not, in fact, sell said property to Mr. Chandler; that on the 28th day of October, 1907, all of the assets, goods, wares and merchandise of the said W. L. Grush Produce Company were transferred into the possession of the respondent and that no consideration was paid therefor, and that the value of said property was about four thousand dollars; that when W. L. Grush went into voluntary Bankruptcy he was the owner of certain lots in Kansas City which he listed as a part of his assets and turned over to the trustee in bankruptcy, and that afterwards Grush procured an order to be made by the referee in bankruptcy upon the trustee in bankruptcy to sell the said lots at private sale, and said lots were sold and purchased by and conveyed to the respondent herein for a consideration of two hundred and fifty dollars.

The parties in their respective statements disagree almost entirely as to the facts as disclosed by the evidence. It was disclosed by the evidence that about the 5th of November, 1907, the plaintiff obtained judgment against the W. L. Grush Produce Company, a corporation, doing business in Kansas City, Missouri, for the sum of

156 App.—38

$2,500; that in the month of October next prior thereto, said company became insolvent and went into bankruptcy; that Grush himself was for all practical purposes the corporation, being the owner of all but a few shares of the stock which were held by others in order to have a sufficient number to organize as a corporation; that about this time, the purpose was conceived by friends of Grush, who were also engaged in the same and similar businesses, to form a new corporation in order to afford him assistance; that in furtherance of this object a new corporation was formed under the same name as the old and $7,500 of its stock was subscribed and paid up by the new members of the corporation.

It appears that it was arranged the new company should take over the property of the old, and that Grush was to continue to run the business in the same manner that he had formerly under the old organization, for which he was to receive a monthly salary of $200. It is insisted that it was a part of the agreement that the subscribers to the stock in the new company should hold such stock for and on behalf of Grush. But the evidence tended to show that there was no such agreement, but it seems that it was the general understanding among them that they were expected to sell their stock to him when he was able to pay for it, if he wanted to buy. Subsequently, some of them did sell to Grush their stock, for which he paid in one instance the par value and profits and in other instances par value and ten per cent interest. But at the time of the trial the majority of the shareholders retained their holdings.

About the time of the formation of the new company J. E. Chandler, one of its incorporators, bought from the old company its horses, wagons and other equipment for the sum of $1935, all of which was taken over by the new company. As soon as it was incorporated the new company bought of the old company all of its stock of merchandise on hand for which it paid the sum of $2.142.72. It was shown that the price paid for all the

said property was its reasonable market price. It was further shown that the money so received was paid out by the old company to its creditors. In the course of a short time thereafter it collected from its outstanding accounts about $8,000 all of which was also paid out to its creditors. The finding and judgment were for the defendant and plaintiff appealed.

It is held that: "Where one corporation goes entirely out of existence by being annexed to or merged in another, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the subsisting corporation will be entitled to all the property, and answerable for all the liabilities." [Thompson v. Abbott, 61 Mo. 176.] And it is said: "It is a settled rule of equity jurisprudence that where one corporation is consolidated with another, or merged in another, which takes its property, such new corporation is bound to discharge the liabilities of the old one." [Bertholdt v. Land & Lumber Co., 91 Mo. App., 233.] And, "An educational society chartered under the laws of this state may add to or change its charter without destroying its identity, and such alteration of the charter may as well be effected by substitution of a new charter, which is germane, as by the adoption of mere amendments." [Grand River College v. Robertson, 67 Mo. App. 329.]

The instances cited are not parallel to this one. The purpose of the new company was not to continue in existence the old company, but to put into existence a new corporation with new stockholders. It did not take over the property of the old company, but bought it outright with the money of its shareholders. It was in no sense a continuance of the old company except in name. It lacked in the most important particulars the elements of a consolidation with the old company or a merger of the latter.

Do the facts shown constitute fraud as meant by the statute? We think the evidence conclusively shows

that there was no intentional fraud upon the part of the new incorporators. It was not their object to defeat creditors, but to help to re-establish their friend upon a new footing in business. He was about to go into the bankruptcy court in order to relieve himself from the burden of insolvency, and his friends in anticipation of that fact formed the new corporation in the furtherance of their purpose.

But there is another controlling factor in the case, viz.: There was no fraud. The money paid for the property of the old company was applied by it to the payment of its debts. And the facts go to show that Grush as sole owner and manager of the old company intended no fraud as against his creditors, or else why should he have applied all the money he received from the new corporation for his property and all its assets to the payment of his liabilities? The whole transaction savors of the utmost generosity on the part of the in‑ corporators of the new corporation on the one part, and the strictest fidelity upon the part of Grush as sole owner of the old company. Most of the members of the new company were engaged in the same business as was Grush, and as such, were his competitors, and their effort to strengthen his hands in the contest in order that he might not fail in the struggle should be commended rather than condemned.

It is said in behalf of the new incorporators, with a single exception, that they did not know of the pendency of plaintiff's suit at the time of the formation of the new company, and that person who had such knowledge had the impression that it had been settled.

It being fully established that the transaction amounted to nothing more than the purchase of the property of one corporation by another in good faith, we cannot see wherein appellant has any standing in equity. It is true the transaction amounts to giving a preference of one set of creditors over another. But it is legitimate for a corporation in failing circumstances to prefer one

creditor to another in discharging its obligation, "if the preference is made in good faith while the property remains in its possession unaffected by liens or by process of law." [Alberger v. Spank, 123 Mo. 313; Schufeldt v. Smith, 131 Mo. 286.]

The judgment is affirmed. All concur.