[Civil No. 1320. Filed January 22, 1914.]

[138 Pac. 777.]

T. W. OTIS, Appellant, v. THE OHIO MINES COMPANY, a Corporation, and THE JESSIE MINES COMPANY, a Corporation, Appellees.

1. PLEADING—REPLY—DENIALS—NEGATIVE PREGNANT.—A reply denying all and every allegation of the answer in the words of the allegation is a negative pregnant and as a traverse is ambiguous and to be condemned, being only a denial that the allegations of the pleading traversed, taken conjunctively, are true.

2. PLEADING—ACTION—ISSUES.—The answer, in an action on a corpora-
tion note, alleged that the president, being unable to pay his
debts to the payee, conspired with him to represent to the cor-
poration's directors that the debt was incurred for supplies for
the company, and that it was equitably bound to pay the debt.
There was no allgeation that such representations were made to the
directors or that the note sued on was given as the result of any
such representations. *Held,* that a denial of such allegations raised
no material issue.

3. CORPORATIONS—CONSOLIDATION—ASSUMPTION OF LIABILITY.—Where
defendant corporation was organized for the purpose of purchasing
all of the property of another corporation, and such property was
paid for in shares of the defendant company issued directly to the
stockholders of the original company, the defendant corporation is
liable for all the debts of the original corporation.

4. CORPORATIONS—CONSOLIDATION—ACTIONS—EVIDENCE—SUFFICIENCY.—
In a suit on a note which plaintiff claimed the defendant corpora-
tion had assumed as one of the debts of its predecessor, evidence
*held* insufficient to show that defendant's predecessor, whose debts it
assumed, received any consideration therefor.

[As to right of corporation to consolidate in absence of legis-
lative authority, see note in Ann. Cas. 1913A, 1192. As to effect
of consolidation of corporations, see note in 89 Am. St. Rep. 604.]

APPEAL from a judgment of the Superior Court of the
County of Yavapai. Frank O. Smith, Judge. Affirmed.

STATEMENT OF FACTS BY THE COURT.

The appellant, as plaintiff, commenced this action upon a
promissory note dated July 20, 1908, due four months after
date, payable to the order of T. P. Otis in the sum of
$6,456.25, with interest from date at the rate of ten per cent
per annum, with a reasonable attorney's fee in case of suit.
The note is signed: "Jessie Mines Company, by John S.
Jones, Prest." The note was indorsed: "Pay T. W. Otis
or order for collection or renewal. T. P. Otis." On Janu-
ary 17, 1908, the board of directors of the Jessie Mines Com-
pany adopted a resolution as follows: "Whereas, this com-
pany is indebted to T. W. Otis of Prescott, Arizona, for
supplies furnished the company during its existence in the
sum of approximately $6,200; and whereas, John S. Jones
has given his personal note for the same: Now, therefore, be
it resolved, that this board of directors hereby ratify the

action of said John S. Jones and undertake to pay the said indebtedness.'' Upon the authority of this resolution the president of the company, John S. Jones, made the note sued upon payable to T. P. Otis.

The appellee Ohio Mines Company became a corporation after the note was made and delivered. The Jessie Mines Company sold and transferred all of its assets to the Ohio Mines Company under date of January 14, 1909. The proposition to purchase is addressed to the Jessie Mines Company and recites the organization of the Ohio Mines Company, its capital stock, that the proposition is made in accordance with a resolution passed by the stockholders and board of directors. The offer made is as follows: ''We hereby offer to purchase all the mining properties of the Jessie Mines Company, machinery, tools, and all appurtenances and equipment pertaining to the mining properties owned by the said company, the De Large ranch, all buildings located on any and all of the said properties, office furniture, books of account, and equipment wherever the same may be and wherever located for the sum of . . . $2,300,000, and we offer in lieu of cash to issue . . . 2,300,000 shares of the capital stock of the Ohio Mines Company, in full payment for its assets as above set forth; and we agree to issue said stock in accordance with the instructions of the Jessie Mines Company to the stockholders of the said the Jessie Mines Company in the same number of shares of the same par value as said stockholders now hold in said the Jessie Mines Company. The Ohio Mines Company will assume only the proper and legitimate debts incurred in the operation of the properties belonging to the Jessie Mines Company incurred since its organization, and upon receipt of an itemized statement thereof, duly acknowledged before a notary public, and approved by a resolution of the board of directors of the Jessie Mines Company, it being the spirit and understanding of this offer that the Ohio Mines Company, in the case of the presentation of improper or disputed accounts shall, at its election, be clothed with all the rights, defenses, and privileges of the Jessie Mines Company.'' The offer was then presented to a meeting of the stockholders of the Jessie Mines Company and accepted by a unanimous vote, and the officers of the

Jessie Mines Company were authorized and instructed to make the necessary transfers and conveyances of title.

The note in suit was presented to the Ohio Mines Company for payment, and payment was refused. The cause was tried to the court without a jury; a judgment resulted in favor of the defendants and against the plaintiff for costs. The plaintiff's motion for a new trial was denied, and he appeals. Other facts are stated in the opinion.

Mr. James Loy, for Appellant.

Messrs. Norris & Mitchell, for Appellees.

Mr. John H. Price, of Counsel.

CUNNINGHAM, J.—The note in suit was made by John S. Jones, as president of the Jessie Mines Company, and upon its face it purports to have been made for and in behalf of and as the obligation of the Jessie Mines Company. The note is made payable to T. P. Otis and assigned by him to T. W. Otis for collection or renewal. The appellee Ohio Mines Company is sought to be held as the payor of the note by plaintiff, for the reason the Ohio Mines Company purchased all the assets of the Jessie Mines Company, and in part consideration for such purchase of such property the Ohio Mines Company "promised and agreed to and with the Jessie Mines Company to pay said note." It is alleged by the plaintiff that he ratified said agreement and sale, and since said agreement and sale he has looked to said the Ohio Mines Company for payment and satisfaction of the note.

The defendants join in a third amended answer. They admit the sale and transfer of all the property to the Ohio Mines Company and deny the other allegations of the complaint. As a second defense in said amended joint answer, they allege the facts of the organization of the Jessie Mines Company as of October 11, 1901, and that it continued to do business until January 11, 1909, when it sold all its property to the Ohio Mines Company, a corporation organized about January 15, 1909. It is alleged that the Ohio Mines Company was organized "for the purpose of purchasing the assets of the Jessie Mines Company." It is alleged that,

several years prior to the organization of the said corporations, one John S. Jones became indebted to the plaintiff T. W. Otis in the sum of about $6,000, for which indebtedness said Jones gave his personal promissory note. Said note was renewed from time to time for a period of about ten years, or until January 17, 1908. That the consideration for such note was the personal indebtedness of John S. Jones. That on or about January 17, 1908, John S. Jones became financially embarrassed and unable to pay the said personal indebtedness due to plaintiff herein, of which the plaintiff and his assignor, T. P. Otis, well knew. Whereupon John S. Jones, T. P. Otis, and plaintiff T. W. Otis entered into a scheme, confederation and conspiracy to represent to the board of directors of the said Jessie Mines Company that said indebtedness had been incurred in purchasing supplies and merchandise for said Jessie Mines Company during its existence, when in fact said supplies and merchandise had not been furnished to the said company but to said Jones personally, of which the said parties knew; "that said parties unlawfully planned to compel and force the Jessie Mines Company to pay the said personal indebtedness of the said John S. Jones and wrongfully, fraudulently, and falsely claimed and pretended that the Jessie Mines Company was obligated and bound to assume in behalf of and to pay to said T. P. Otis and T. W. Otis the alleged and pretended indebtedness and liability claimed and pretended to have become due from Jessie Mines Company to T. W. Otis and T. P. Otis; that the said scheme, conspiracy, and confederation was fraudulently, falsely, and deceitfully made and entered into between said John. S. Jones, T. W. Otis and T. P. Otis to impose an unjust and unconscionable claim upon these defendants, which these defendants had not in any manner or wise assumed, contracted, or obligated themselves to pay; that these answering defendants have never received any consideration whatever for the said note, a copy of which is set forth in the petition of the plaintiff."

The plaintiff in a reply to the third joint answer denies all and every allegation of the same in the words of the allegation. Such a denial is a "negative pregnant" and as a traverse is a species of ambiguity and is condemned by the

old pleaders. Gould, Pl., c. 6, sec. 30; Steph. Pl. 336; Shipm. Pl., p. 264. And the code states as well. *Kay* v. *Whittaker,* 44 N. Y. 565; *Young* v. *Catlett,* 6 Duer (N. Y.), 437; *Blankman* v. *Vallejo,* 15 Cal. 638; *Kuhland* v. *Sedgwick,* 17 Cal. 123; *Woodworth* v. *Knowlton,* 22 Cal. 164; *Bradbury* v. *Cornwise,* 46 Cal. 287; Bliss, Code Pl., sec. 332. In *Young* v. *Catlett, supra,* the court says: "This is only a denial of knowledge sufficient to form a belief whether these facts or allegations in the complaint, taken conjunctively, are true."

The third joint answer simply recites: That on January 17, 1908, John S. Jones became financially embarrassed and was unable to meet his personal indebtedness due the plaintiff, and he with the plaintiff and T. P. Otis entered into a conspiracy to represent to the directors of the Jessie Mines Company that such indebtedness had been incurred in behalf of the Jessie Mines Company for supplies and merchandise purchased by Jones, its president and controlling stockholder, from the plaintiff for the company's use and benefit, and that the Jessie Mines Company was equitably bound to pay such debt. That the conspiracy was fraudulently, falsely and deceitfully entered into to impose an unjust and unconscionable claim upon these defendants. That the defendants had not in any manner or wise assumed, contracted or obligated themselves to pay. Nothing is attempted to be alleged that such representations were ever made to the directors of the Jessie Mines Company by any one in pursuance to the carrying out of such conspiracy, nor that the note of the Jessie Mines Company was made and delivered by reason of such representations in pursuance to such conspiracy, and hence a denial of such recitals raised no material issue for trial. In the answer the defendants allege "that these answering defendants have never received any consideration whatever for the said note, a copy of which is set forth in the petition of the plaintiff." This allegation is directly denied by the reply. The parties and the court treated this sufficient to raise the issue of no consideration, and this is the only issue of fact raised by the pleadings for trial.

The pleadings admit that the Ohio Mines Company was organized for the purpose of purchasing all the property of the Jessie Mines Company, and such property was paid for

in shares of stock of the Ohio Mines Company, issued by it to the stockholders of the Jessie Mines Company direct, and in the same number of shares each stockholder in the Jessie Mines Company held in such company. In legal effect the Ohio Mines Company stepped into the shoes of the Jessie Mines Company. The Jessie Mines Company simply changed its name to that of the Ohio Mines Company and possibly increased its capital stock. So considered the law will impose upon the Ohio Mines Company all the legal obligations of the Jessie Mines Company without regard to the positive assumption by the Ohio Mines Company of such obligations. The Ohio Mines Company expressly assumed such obligations of the Jessie Mines Company as were incurred in the operation of the mines since the organization of the Jessie Mines Company. The question with which we have to deal here is whether the note in suit became a legal obligation of the Jessie Mines Company; if it became such obligation the Ohio Mines Company is liable, otherwise it is not liable.

Plaintiff in his reply alleges: That the plaintiff's assignor, T. P. Otis, was the owner and holder of a note of John S. Jones on January 17, 1908, and on or about that date the board of directors of the Jessie Mines Company passed the resolution set forth in the statement of facts. That the resolution was adopted by a majority of the said board independent of any participation therein of John S. Jones. That pursuant to such resolution the president of the Jessie Mines Company issued its promissory note to T. P. Otis in consideration for the personal promissory note of John S. Jones. That, upon the issuance of said Jessie Mines Company's note to T. P. Otis, he surrendered to the Jessie Mines Company the John S. Jones note. That, at the time T. P. Otis surrendered to the Jessie Mines Company the John S. Jones note, John S. Jones was solvent, and the amount of the note so surrendered could have been recovered from the payor of the note in a suit at law.

The question at issue is whether the Jessie Mines Company received any consideration for the note in suit. The plaintiff contends that the John S. Jones note was assigned to the Jessie Mines Company in exchange for the note of the company, and that at the time of the exchange the Jones note

was a valuable, collectable security. The defendants contend in their pleadings: That, while the Jones note was exchanged for the note of the Jessie Mines Company, at the time of such exchange the Jones note was of no value, for the reason it was a personal obligation of Jones, and he was financially embarrassed and unable to pay his personal liabilities, and he imposed this Otis liability upon the Jessie Mines Company. That, at the time this Jessie Mines Company made the exchange of notes, Jones was the president, the controlling stockholder, and through his powers over the management of the affairs of the Jessie Mines Company he brought about the exchange of notes.

The court finds as a fact that T. P. Otis surrendered and redelivered to John S. Jones his personal note, which Jones kept, and did not account therefor to the Jessie Mines Company. That no consideration whatsoever passed from T. P. Otis or from T. W. Otis for the Jessie Mines Company note. This is a direct finding of the contested issue in the case against the plaintiff. The appellant attacks the findings containing the above and assigns error thereon because the said findings are not supported by the evidence.

John S. Jones, testifying in behalf of the plaintiff, stated that he was president and a director of the Jessie Mines Company from the time of its organization until it ceased doing business in 1909 by transferring all its assets to the Ohio Mines Company. He was president and a director on January 17, 1908. He purchased supplies of T. W. Otis. The indebtedness for the supplies was represented by the personal note of witness. This note was taken up by the Jessie Mines Company. "The Jessie Mines Company issued its promissory note for this personal note of mine. I have testified that the Jessie Mines Company issued its note in payment of my personal note and delivered its note to T. W. Otis. . . . It was issued to T. W. Otis and my note exchanged for it. The Jessie Mines Company gave a note in exchange for my note by order of the board of directors." The resolution appearing in the statement of facts above is then offered as the authority for making the note. Then he testifies that a note of the Jessie Mines Company was exchanged for his personal note and thereafter the first Jessie Mines Company's

note was exchanged for a later note, the note in suit. "I issued the Jessie Mines Company note, of which this is a renewal, shortly after the resolution of authority from the board of directors. I issued the note by authority of the board of directors." The personal note was taken up by the company. At a later stage of the trial John S. Jones was further examined. He states under cross-examination: "On January 17, 1908, when Jessie Mines Company gave its note for my personal note to Mr. Otis, I got my note back. I think it was destroyed. I won't be positive about it. I might have it among some of my papers. I don't think my personal note was ever given to the Jessie Mines Company." He further testifies as to his indebtedness to various creditors in January, 1908, aggregating about $56,000, beside this note of about $6,200 due Otis, and a bond for $75,000 due his children on the Jessie mine. He owed attorneys' fees for which he gave notes to the amount of $40,000 and 80,000 shares of stock, owed $12,000 to Prescott people, and 100,000 shares of stock was appropriated by him to pay debts at Columbus, Ohio. "Was not able in January, 1908, to pay these bills; they were paid in stock; was not able to meet my bills had that month. Told Mr. Otis that I could not pay his note in the month of January, 1908. Told him at various times." The only property Jones owned in January, 1908, was the property where he was working at the time of the trial and where his family lives. The children have a mortgage on that property. In another part of his testimony the witness states that he owned about 900,000 shares of stock at that time. Witness stated that he was worth more than $6,000 on January 17, 1908, unless a second mortgage was then in existence. In which case it would be a difficult matter to collect the note; it would be the same position to collect as at present. The mortgage to the children for $75,000 was equal to the amount the property would sell for at cash sale. The stock is all tied up. Could not sell any stock of the Jessie Mines Company during January, 1908, during this trouble.

This evidence clearly preponderates in favor of the contention of the defendants that the note of John S. Jones ex-

changed for the note of the Jessie Mines Company was worthless, and known to the parties making the exchange to be worthless. Jones told Otis he was not able to pay the note. All the property owned by Jones was tied up so that an execution against Jones would have been ineffectual to collect a judgment upon the note. It is equally clear from the testimony of Jones and Otis that the Jones note was made to settle an account due Otis for supplies furnished Jones while he was engaged in the development of the Jessie mines preparatory to the organization of the Jessie Mines Company. Jones testifies upon that question, and it is not contradicted by anyone, as follows: ''These various accounts of indebtedness that I owed to the Bank of Arizona, and to Mr. Otis, and the Bashford-Burmister Company, and anywheres I could get credit, were used in the development of the property, in developing the mines, the Jessie mines. It was through their kindness that enabled me to develop the property, to develop the mine into an engineer's report, Mr. Warra's report, showing a value in his report in the neighborhood of $900,000 of ore in sight. This is what brought out the property; was the various credits I received from merchants, the Bank of Arizona, and different ones.''

The parties in their pleadings admit that the date of the incorporation of the Jessie Mines Company was in October, 1901. Otis testifies on cross-examination that he first obtained the John S. Jones note about 1898. He was asked: ''When were these supplies furnished to John S. Jones? Answer: Same time in 1898.'' He states the supplies for which the first note was given were furnished before 1898. The evidence is clear that the note for the indebtedness was renewed from time to time until the note in suit was given, and no other consideration passed for the renewal notes except the extension of the time for payment. The findings of the court that the note in suit was without consideration to the Jessie Mines Company is fully justified by the evidence.

Appellant has raised other questions, but, from the view we have taken of the case, such questions are not controlling in a disposition of the appeal, not within the issues raised by

XV Ariz.—18

the pleadings, and a discussion would only serve to extend this opinion without material profit.

The judgment is affirmed.

FRANKLIN, C. J., and ROSS, J., concur.

Application for rehearing denied.

NOTE.—As to the effect of the consolidation, merger or absorption of a corporation, on its unsecured liabilities, in absence of statutory or contract provision relative thereto, see notes in 11 L. R. A., N. S., 1119, 32 L. R. A., N. S., 616, and 47 L. R. A., N. S., 1058.