BLUE RIDGE ELECTRIC CO. v. AMERICAN BANK NOTE CO.

(Circuit Court of Appeals, Fifth Circuit.   November 13, 1916.)

No. 2969.

1. EQUITY ☞3—JURISDICTION—INCIDENTAL JURISDICTION.

A court of equity may administer a bare common-law remedy when, and only when, it is incidental to the enforcement of some equity which gives the court jurisdiction.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 7–12; Dec. Dig. ☞3.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

2. EQUITY ☞43—JURISDICTION—REMEDY AT LAW.
    A court of equity *held*, on the evidence, without jurisdiction to render a money decree against a defendant corporation, based on the claim that defendant had assumed the indebtedness of another corporation, the liability in such case being purely a legal one, and where it further appeared that complainant's claim had never been adjudicated, was disputed by defendant, and that the alleged original debtor was not a party to the suit.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 121–140, 164–166; Dec. Dig. ☞43.]

Appeal from the District Court of the United States for the Northern District of Georgia; Wm. T. Newman, Judge.

Suit in equity by the American Bank Note Company against the Blue Ridge Electric Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 230 Fed. 911.

R. C. & P. H. Alston, of Atlanta, Ga., and H. H. Dean, of Gainesville, Ga., for appellant.

Henry A. Alexander, of Atlanta, Ga., for appellee.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

CALL, District Judge. The theory upon which the original bill was filed in this case was that the defendant had acquired all the property of the North Georgia Electric Company from S. Fahs Smith, who had bought it under a foreclosure decree, acting as the agent of the secured and unsecured creditors of said last-named company, of which unsecured creditors the complainant was one; that all the unsecured creditors, except complainant, had been satisfied, and that the defendant had then subject to its control certain of the securities issued by it for the purchase of the property; that the stockholders of the debtor company had also received a certain proportion of stock in the Georgia Power Company in exchange for stock held in the debtor company; that this was a fraud upon its rights—and prayed that the transaction be decreed illegal and void against it, that its claim be established as a first lien on the assets and properties of the North Georgia Electric Company, and that the enforcement of the same be provided for by foreclosure and sale. To this bill a demurrer was interposed by the defendant on July 31, 1912.

The pleadings remained in this condition until April 19, 1913, when the complainant amended its bill, by alleging the subscription contract by S. Fahs Smith with the defendant to take its full issue of stock and bonds and stock of the Georgia Power Company, for which he was to convey to the defendant all the assets and properties of the North Georgia Electric Company and the Etowah Power Company, bought by him at the foreclosure sale, and have the defendant execute a lease of such portion of the properties to the Georgia Power Company as it should desire, with the contract to sell when desired, and the lease made pursuant to such subscription contract. Such amendment also

set up transactions between the Georgia Power Company and the Georgia Railway & Power Company, whereby the properties were conveyed by the last-named company, and prayed that the Georgia Railway & Power Company be made a party defendant, and that a lien be set up and established in favor of the complainant upon said properties in the ownership of said Georgia Railway & Power Company. And it further amends by adding the following passages: That in addition to the relief hereinbefore prayed, and in addition to the liens against the property and assets of the North Georgia Electric Company, that a general judgment be rendered in its favor against the original defendant, the Georgia Power Company, and the Georgia Railway & Power Company.

This amendment was allowed by the trial judge on May 1, 1913. On the same day the demurrer theretofore interposed was overruled, without prejudice to the defendant's right to set up any insufficiency in the bill by way of answer. Thereupon, on the 16th of May, 1913, the Blue Ridge Electric Company filed answers to both the original bill and the amendment. On September 23, 1913, in response to certain motions by complainant, it filed an amended answer, setting up, in addition to matters theretofore pleaded in defense, that the complainant intervened in the original foreclosure suit, and propounded its claim, and had same allowed. Whereupon, on October 1, 1913, the complainant again amended its bill, and alleged that it neither by itself nor by any authorized agent intervened in said suit, nor received or retained any payment pursuant to said decree of foreclosure, and that in any event other unsecured creditors intervened and were allowed their claims, received payments thereunder, and received first mortgage bonds of the Blue Ridge Electric Company for their claims.

Thereupon, on October 2, 1913, the Blue Ridge Electric Company filed its motion to dismiss the bill, because not proper parties, the North Georgia Electric Company not being a party; the claim never having been reduced to judgment the complainant cannot proceed in equity against this defendant; and because, under the allegations of the bill as amended, it shows that S. Fahs Smith was its trustee and received the contract price in the securities of the defendant.

Thereupon, on October 3d, the complainant again amended its bill, alleging that upon the appointment of the receiver the North Georgia Electric Company was stripped of its properties and ceased to do business, and so notified the Secretary of State of Georgia, ex officio corporation commissioner, abandoned its office in Gainesville, Ga., and ceased making reports. Whereupon, on October 8, 1913, the Blue Ridge Electric Company renewed its motion to dismiss theretofore filed, and moved further to dismiss because:

(1) The petition as amended shows complainant has never recovered judgment against the North Georgia Electric Company.

(2) The alleged account is not recognized as valid by the defendant in this cause.

(3) The plaintiff must first obtain a common-law judgment against the debtor and have execution issued and returned.

(4) The North Georgia Electric Company is not a party and the claim asserted is a breach of a simple contract with said company.

(5) There is no equity in the bill as amended.

(6) The court of equity has no jurisdiction to entertain plaintiff's suit under the allegations of the bill.

(7) The North Georgia Electric Company has a right to a jury trial under the Constitution, and this suit violates the Seventh Amendment.

(8) That the bill as amended shows that the assets and property formerly belonging to the North Georgia Electric Company have been sold and transferred to the Georgia Power Company.

(9) That the bill shows the defendant has no property or proceeds thereof impressed with a trust in favor of complainant.

(10) The allegations of the last amendment are insufficient to show the non-existence of the North Georgia Electric Company, as required by sections of the Georgia Code.

On October 31, 1913, the complainant again amended its bill by leave of court, setting up the sale under foreclosure decree, the confirmation of same, the conveyance by S. Fahs Smith to the Blue Ridge Electric Company, and the conveyance by the last-named company to the Georgia Power Company, as well as the entire stock of the company; the conveyance from the Georgia Power Company to the Georgia Railway & Power Company, the last-named company assuming all the debts and liabilities of the Georgia Power Company; pleading section 2609 of the Georgia Code; that the Georgia Railway & Power Company at the date of the suit owned all the stock of the Blue Ridge Electric Company and the Georgia Power Company; that C. Elmer Smith and Eugene Ashley took active part in the organization of said Georgia Railway & Power Company, and said C. Elmer Smith is and has been since the organization a director in said company. Again the defendant filed a motion to dismiss, insisting upon all the grounds set out in motions to dismiss theretofore filed. The motion to dismiss the bill was on the 3d day of January, 1914, denied. Following the order denying the motion to dismiss, the court says:

"I have determined already that the Georgia Railway & Power Company should be stricken as a party defendant, because the complainant has no lien, which would be necessary to a proceeding against it."

At any rate the Georgia Railway & Power Company has never, so far as the record shows, been made a party defendant, and the only defendant ever appearing on the record is the Blue Ridge Electric Company. Motions were made by complainant for better answer in certain particulars, and, the court having granted the motion as to certain particulars, answer was made as to those particulars. The case was tried by the judge, and a decree rendered on June 16th in favor of the complainant and against the defendant for $10,283.62 and costs of court.

From this decree defendant appeals to this court. There are some 20 errors assigned. It will not be necessary to notice each of said assignments in detail. The judge below clearly indicated in his opinions appearing in the record that the case was decided on the view that the defendant had assumed the payment of this debt to the complainant.

As before stated, the theory of the complainant when it filed its bill was that the defendant took the property subject to the trust that an insolvent corporation's property must be first applied to the pay-

ment of its debts before the stockholders can receive any benefit therefrom; and had the cause continued in this view and the evidence supported the allegations, there was equity in the bill. Evidently the lower court found the evidence did not support this contention, and the appellee in his brief does not so contend. By the first amendment to the bill, made on April 19, 1913, whereby it was sought to make the Georgia Railway & Power Company a party defendant, the complainant incorporated an additional prayer for a money judg-, ment against the original defendant, as well as against the Georgia Power Company and the Georgia Railway & Power Company, and it was in pursuance of this last prayer that the decree was rendered in this case.

[1] It is a principle of equity too well settled to require citation that, in a case where an equity exists, this equity will draw to itself all questions in the case necessary to be decided, and the chancery court will by its decree settle all questions arising in the case, although as to some of the questions, if raised independently, equity would have no jurisdiction, and a common-law court could afford a full and adequate relief. It is equally well established, however, that if this equity, upon which depends the jurisdiction of the chancery court, fails, that court may not proceed and administer a bare common-law remedy.

The facts of the case, as gathered from the pleadings and the evidence germane to the issues, may be stated as follows:

In 1907, the North Georgia Electric Company, a Georgia corporation, was in financial difficulties, if not insolvent. It had issued three series of bonds—the first in 1902, for $200,000; the second in 1904, for $250,000; and the third in 1906, for $491,000. The Knickerbocker Trust Company was the trustee in each case. In September, 1907, the Knickerbocker Trust Company filed its bill in the United States Circuit Court for the Northern District of Georgia to foreclose the mortgage given in 1906 to secure the last issue of bonds. In this condition of affairs, W. A. Carlisle, the president of the North Georgia Electric Company, sought to interest certain parties in the reorganization of the company, and C. Elmer Smith and Eugene Ashley took an interest in the matter. The plan evolved to do this was by the issue of additional stock and new bonds, ·the new bonds to be exchanged for the secured and unsecured indebtedness; and in pursuance of this plan the complainant entered into an agreement with C. Elmer Smith as manager on July 1, 1908, subscribing for $8,976.60, of the bonds, to be paid for by assigning claim for $7,405.70, difference, if any, to be adjusted by cash payment. This plan failed of consummation, and the agreement was returned to the complainant.

In May, 1909, the Georgia Power Company entered into an agreement with the Atlanta Power Company to purchase the assets and properties of said Atlanta Company, and wherein the Atlanta Company undertook to acquire the properties and assets of the Etowah Power Company and the North Georgia Electric Company and convey same to the Georgia Power Company, all of such property to be as far as possible free from all incumbrances and liens, and ac-

cept in payment therefor $1,550,000, par value of the common capital stock of the Georgia Company, and $1,550,000, par value, of the first mortgage bonds of said company; the securities to be apportioned as follows; $550,000 of the capital stock and $1,000,000 of the bonds in payment for the properties of the North Georgia Electric Company.' Thereafter, in June, 1909, the Atlanta Power Company and various stockholders of the North Georgia Electric Company entered into an agreement to deposit their stock with the Carnegie Trust Company, and the Atlanta Power Company would exchange with the subscribers, holders of unsecured notes and open accounts, referred to in schedule attached (the complainant being therein mentioned, but for no specific amount), first mortgage bonds of the Georgia Power Company at par for said notes and open accounts, plus interest to date of exchange. In May, 1909, C. Elmer Smith and Eugene Ashley were appointed a committee to open negotiations with the stockholders pursuant to the agreement between the Atlanta Power Company and the Georgia Power Company, and the contract of June, 1909, above mentioned was presumably the result of this appointment. Outside capital having been interested in the Georgia Power Company's affairs, authority was obtained from the Georgia Railroad Commission by said company to issue $10,000,000 of stock and $10,000,000 of bonds to provide for certain improvements.

The cause of Knickerbocker Trust Company v. North Georgia Electric Company was pushed, and resulted in the appointment of a receiver for all its properties, and a final decree of foreclosure and sale thereunder was had in May, 1910, subject to the first and second issue of bonds heretofore mentioned. At this sale S. Fahs Smith purchased the property of the North Georgia Electric Company, bidding therefor the sum of $400,000. Previous to this purchase the said S. Fahs Smith, the Georgia Power Company, and the holders of the bonds secured by the deed of trust, being foreclosed, entered into an agreement wherein the bondholders agreed to deposit with S. Fahs Smith, as trustee, the bonds held by each, to be used in the purchase of the property at the sale under foreclosure, and the trustee agreed that, if he purchased said property at such sale, he would hold the title to same for the benefit of each of said subscribers in proportion that the subscribers' bonds bear to the whole issue, and convey same to the Georgia Power Company upon certain terms therein contained, to wit, on receipt of certain bonds of the Georgia Power Company to be delivered by the said trustee to the subscribers therefor. The agreement contains provisions not necessary to notice in this connection. It having been decided, on account of arrangements made for additional capital, that the Georgia Power Company could not receive title to the properties purchased at the foreclosure sale, S. Fahs Smith organized the Blue Ridge Electric Company in November, and subscribed for the entire issue of stock of $50,000 and $1,370,000 of bonds, to be paid for by conveying to it the properties of the North Georgia Electric Company and the Etowah Power Company purchased by him. This subscription provided that certain of the properties should be leased to the Georgia

Power Company. The subscription also provides that he is to receive $1,550,000 of the capital stock of the Georgia Power Company.

After the organization of the Blue Ridge Electric Company, the Georgia Power Company transferred or assigned to it the contract theretofore made with the Atlanta Power Company. The assent of the Atlanta Power Company may be presumed, as it held the capital stock of the Georgia Power Company. On January 10, 1911, S. Fahs Smith conveyed all the properties acquired by him at said sale to the Blue Ridge Electric Company; and the Blue Ridge Company in September following conveyed all its property to the Georgia Power Company. This last-named company received a transfer of all the stock of the Blue Ridge Electric Company. On March 16, 1912, before this bill was filed, the Georgia Power Company conveyed all its property to the Georgia Railway & Power Company. By a payment in cash for certain of the properties the Blue Ridge Electric Company retired $235,000 of its bonds, thus leaving outstanding $1,135,000 of bonds. The proofs show that the stockholders of the North Georgia Electric Company received from the Atlanta Power Company shares of stock of the Georgia Power Company, in the proportion of 1 to 4 of their holdings in the Georgia Electric Company, and that the bondholders of said last-named company received the bonds of the Blue Ridge Electric Company for bonds held by them, as well as the persons holding unsecured claims, and that the complainant did not. The proofs further show that C. Elmer Smith and Carlisle, the president of the North Georgia Electric Company, after the failure of the plan first attempted, each wrote a letter to the complainant that its claim would be protected.

[2] The decree in this case can be sustained only on the ground that there was a direct assumption of the payment of this claim by the defendant; and this contention seems to be based upon the letters of C. Elmer Smith and W. A. Carlisle, following upon the first plan of reorganization consented to by the complainant, but which was afterwards abandoned. The bill as first filed, and the contention maintained throughout the pleadings, was that S. Fahs Smith, the brother of C. Elmer Smith, in the purchase of the corporation properties under the foreclosure sale, was acting as trustee, not only for the secured creditors, but also for the unsecured. This contention, in the light of the testimony, is not supported. His duties and responsibilities are to be measured by the written instrument contained in the record, and this shows that he was trustee for the bondholders of the two corporations. The other contention in the original bill filed, which gave the court of chancery jurisdiction, and this contention had great weight with the trial court in overruling the demurrer, was that there were securities under the control of the defendant to be applied to the payment of the claim of defendant. On the rule of law contended for, and which is supported by the authorities, that a reorganization of a corporation in failing circumstances by the formation of a new corporation, which takes over the property of the first, the stockholders retaining an interest in the second, will not prevent the unsecured creditors of the first corporation from pro-

ceeding against the second to collect their debts. This contention also falls in the light of the evidence adduced at the trial, and seems to have been abandoned by the complainant, when it added a prayer to its amended bill for a general judgment.

As the court now understands the contention of the complainant, it is that the complainant assented to the transfer of the corporate property to Smith, and from Smith to the defendant, understanding that it would receive bonds for its claim, and that the defendant assumed the payment of the same in that method. Granting for the moment that this contention is correct, then the defendant is a debtor of the complainant on a bare legal liability, and a court of equity would be without jurisdiction to grant the decree made in this case. But did the defendant assume the payment? Great reliance was placed by the lower court, as evidenced in its opinion, upon the letters of Smith and Carlisle, before referred to, and upon the fact that this Smith, Ashley, and Carlisle were largely instrumental in the formation of the different corporations taking part in the transactions that culminated in the acquisition of the properties of three corporations by the Georgia Railway & Power Company, and that this last-named corporation acquired all the capital stock of the defendant. The proofs in the case do not show, in our judgment, that the defendant ever assumed the payment of this claim.

We are not unmindful of the principles announced in Northern Pacific Railway Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931, and the many cases therein cited, and the case of Central of Ga. Ry. v. Paul, 93 Fed. 878, 35 C. C. A. 639; but the facts of these cases bear no resemblance to the facts of the instant case, and the relief sought is entirely different. In the Paul Case the property and the rights were in process of settlement by the court, and the claim of the intervener had been adjudicated, and the amount fixed. In the instant case the claim of complainant has never been adjudicated, except it be on the intervention filed in the foreclosure proceeding, and that adjudication was repudiated, and the repudiation acquiesced in by all parties, apparently. Now, if the defendant assumed the payment of this claim (leaving out of consideration the jurisdiction of equity to grant the relief), then probably the presence of the original debtor might not have been necessary; or if the property of the corporation was received by the defendant, subject to the express trust to pay complainant, the presence of the original debtor would probably not have been necessary. But, in the absence of one or the other of these facts, it does seem that the presence of that debtor is necessary to litigate a disputed claim, and the existence of this claim as a binding debt was disputed. True, it had been recognized by others; but it was being asserted against this defendant, and was disputed by it, and, however clearly its genuineness may have been established by the testimony admitted, the debtor was not before the court, and the question of its indebtedness vel non could not be litigated without the presence of the debtor.

It does not answer this position to say the debtor was virtually before the court, because Ashley, Smith, and Carlisle were all in-

strumental in forming the corporations, and one corporation owned the stock of others, and that the defendant was the alter ego of the debtor corporation. There was no such consolidation or merger as made the defendant the alter ego of the two corporations, whose properties it received as a conduit to pass title to the Georgia Power Company.

We have not attempted to discuss seratim the assignments of error, but have reached the conclusion that the decree of the trial court should have dismissed the bill.

The case will therefore be reversed and remanded, with instructions to dismiss the suit.