Argued January 17; reversed March 13; rehearing and motion to modify opinion denied July 17, 1934

# DAIRY CO-OPERATIVE ASSOCIATION *v.* BRANDES CREAMERY ET AL.

(30 P. (2d) 338)

*A. E. Clark,* of Portland, and *W. G. Hare,* of Hillsboro (Clark & Clark and R. R. Bullivant, all of Portland, on the brief), for appellant.

*H. L. Swett* and *Robert F. Maguire,* both of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for respondents.

KELLY, J. During the first part of August, 1931, a contract was executed by plaintiff and defendant, Brandes Creamery, bearing date of August 6, 1931. In it, plaintiff is called "the association" and said defendant is termed "the distributor". The .contract provides that the distributor should buy its entire requirement of grade "B" milk and grade "B" cream for bottle and can purposes from and through the association, except that the distributor may continue to carry out certain prior annexed contracts theretofore entered into with producers, who are not members of the association.

A schedule of prices is set forth effective until January 1, 1932. The contract also provides that on

or before December 1, 1931, or before December 1 of any subsequent year, the association and distributor will agree upon a suitable schedule for grade B milk and cream, which price, when agreed upon, is to be effective for one year from the first day of January of each year. There is a further provision that, if the association and the distributor are unable to agree upon such schedule, then such schedule shall be determined by arbitration as thereinafter provided.

Said contract also provides that the distributor shall make regular reports to the association at intervals, to be agreed upon, on the pounds of milk and cream received from each producer and shall mail or deliver to the association the final report on weights and composite tests of milk and cream of producers on the 16th day of each month for milk and cream received the first 15 days of the month, and on the first day of each month for milk and cream received the last half of the previous month, except when the first or the 16th falls on a Sunday or legal holiday, in which event said report shall be mailed or delivered on the day following.

Paragraph 11 of said contract is as follows:

"The parties to this contract recognize the principle of arbitration and agree that the President of the Oregon State College, after conference with the parties hereto, shall appoint an arbiter to decide all disputes and controversies between the parties hereto arising under this contract, including price schedules, the problem of payment for surplus and all other matters, to the end that neither party to this contract shall obtain an advantage over the other and that there shall be fair dealing on the part of both parties. Both parties to the contract agree that the decision of the arbiter shall be final. The Association shall bear half the expense of any arbitration and the Distributors involved therein the other half, proportioned among

them in that proportion that the volume of grade 'B' milk and cream purchased by each from the Association bears to the total volume purchased by the Distributors from the Association.

"It shall be the duty of the arbiter to ascertain, as far as possible, the cost of production, cost of distribution, prices and practices in other markets, conditions in the Portland market, and to advise with both distributors and the Association regarding their problems and possible solution. He shall be, or shall make himself, thoroughly informed regarding the milk business.

"The President of the Oregon State College shall have the right to recall any appointee, when, in his judgment, there is reason so to do, and appoint another arbiter in his place."

Similar contracts were executed by plaintiff and other distributors.

Plaintiff is a cooperative association organized under the laws of Oregon pertaining thereto, being sections 25-801 to 25-827, inclusive, Oregon Code 1930.

Until the 8th day of April, 1932, defendant, Brandes Creamery, was a corporation organized under the laws of the state of Oregon, and engaged in the business, among other things, of selling and distributing fluid milk and cream.

On the 24th day of March, 1932, defendant, Brandes Creamery, Inc., was organized as a corporation under the laws of the state of Oregon, and since its organization has been engaged in the business, among other things, of selling and distributing fluid milk and cream.

Plaintiff alleges that, in reliance upon the strict performance of the contract involved herein and of the other similar contracts above mentioned, it has expended large sums of money in dairy herds and equipment and in efforts to produce cleaner and more wholesome milk and cream for the fluid trade in the city of Portland.

Alleged breaches by defendants of said contract are alleged in paragraph XVII of plaintiff's amended complaint, which is as follows:

"That the defendants have failed and the defendant, Brandes Creamery, Inc., is now failing and refusing to take from plaintiff its milk and cream requirements for the retail and wholesale trade, and the defendant, Brandes Creamery, Inc., was organized as a part of a scheme and design on the part of said defendants to irreparably damage and impair the business of this plaintiff. That in furtherance of said design the defendants have in the past made, and the defendant, Brandes Creamery, Inc., is now making, efforts to cause other distributors who have contracts with the plaintiff similar to that between the plaintiff and the defendant Brandes Creamery to breach said contracts and to take their requirements of milk and cream for retail and wholesale trade from sources other than the plaintiff. That some of said other distributors are not now taking and in the past have not taken all of their requirements for grade B milk and grade B cream for the retail and wholesale trade from this plaintiff, notwithstanding they had contracts requiring them so to do. That plaintiff is informed, verily believes and therefore avers that the defendant Brandes Creamery, Inc., in pursuance of its wrongful design and purpose to cause irreparable injury to the plaintiff and with full knowledge of the contracts of said distributors with the plaintiff has furnished to said distributors grade B milk and grade B cream to enable said distributors to distribute the same to their retail and wholesale trade and to enable said distributors to violate their contracts with the plaintiff and unless the defendant Brandes Creamery, Inc., is restrained from continuing said course of conduct the plaintiff will suffer irreparable injury by the continued breach by said other distributors, so induced by said defendant, of the contracts between plaintiff and said other distributors."

Testimony was introduced disclosing breaches by Brandes Creamery of said contract as above alleged.

■■ Defendants contend that the contract above outlined was procured by duress; that defendant Brandes Creamery, Inc., is neither a party nor privy thereto; that plaintiff has an adequate remedy at law to recover actual damages, and that no facts are shown, which justify equitable cognizance. Plaintiff denies that the contract was procured by duress, but insists that, if it were, defendants have waived their right to urge that defense by unreasonable delay, by having accepted and participated in the fruits of said contract and by a course of dealing with plaintiff on allied matters, which is inconsistent with the claim that defendants deemed themselves under duress.

It is unnecessary to consume time and space in giving in detail the events upon which the alleged duress is based. Suffice it to say, that plaintiff became dissatisfied with the attitude of defendant, Brandes Creamery, and other independent distributors in Portland. By independent distributors is meant those who were not purchasing from plaintiff and its members. A milk war resulted and trucks carrying said defendant's milk to Portland were stopped by forcible and violent means and in several instances the milk was poured out of the cans by the roadside.

While the milk strike was in progress, a fact finding committee was appointed by the mayor of Portland to bring about an adjustment, if possible, of the differences between the parties affected by said strike. On the 6th day of August, 1931, an outline of a proposed contract with plaintiff was submitted to defendant, Brandes Creamery, and to other independent distributors for acceptance or rejection and a few minutes only accorded said defendant and other independent distributors within which to decide whether to accept or reject same. After this proposal was accepted by

the distributors, the strikers were called in and the milk war was at an end. Some days elapsed before the contract in suit was executed.

We are unwilling to hold that the execution of said contract was the result of the voluntary action of the defendant which signed it. We think, however, that the said defendant waived its right to urge duress in the execution thereof.

Immediately after defendant, Brandes Creamery, and plaintiff had agreed upon the terms of the contract in suit, a separate contract was made between them whereby said defendant agreed to handle and separate the surplus milk. The parties to said contract operated under said skimming contract until October 9, 1931.

Defendant, Brandes Creamery, operated under and received the fruits of the contract in suit until January 15, 1932. The contract required said defendant to report at fixed intervals the quantities of milk and cream received from the independent producers with whom it had the several contracts heretofore mentioned and to pay over to plaintiff certain amounts on account of the surplus handled by plaintiff. These reports and payments were made until January 15, 1932.

The prices fixed in the contract were effective only until January 1, 1932. The contract provided for arbitration in case of inability on the part of the contracting parties to agree upon a price schedule for the ensuing year. Plaintiff, said defendant, and other distributors, having similar contracts, were unable to so agree. The matter was submitted to an arbiter appointed in accordance with the terms of said contract. Hearings were held by said arbiter in December, 1931. Albert Brandes, director and vice-president of said defendant, testified as a witness.

The arbiter made an award on December 31, 1931, fixing prices, the level of which was lower than that fixed by the contract.

On February 19, 1932, said defendant refused further to arbitrate matters at issue between plaintiff and said defendant, as provided in said contract and notified plaintiff that said defendant considered said contract void on the ground of coercion and duress. Thereafter, and until its dissolution, said defendant continued to take B grade milk and cream from the plaintiff and made settlement therefor upon the basis of the prices fixed by said arbiter. It is true that said defendant claims that this was for its butter trade and not for its bottle and can trade.

We think that these facts disclose that subsequent to the discontinuance of the milk strike, defendant, Brandes Creamery, acted voluntarily and not under duress with respect to the contract in suit, and generally in its dealings with plaintiff; and thereby waived the defense of duress.

Defendants urge that at luncheons held at the instance of the arbiter, for the purpose of affording the producers and distributors an opportunity to compose their differences, threats were made which revived and continued the feeling of fear on the part of defendant, Brandes Creamery, which impelled it originally to execute the contract in suit. No good purpose will be served by detailing the testimony; but, in our opinion, it preponderates in favor of plaintiff to the effect that there was no renewed threat, and that said defendant was not laboring under a sense of restraint by reason of fear in continuing its operation under the contract in suit.

Both by legislative enactment and judicial construction, such relief is authorized to prevent a breach

of a marketing contract by a member of a cooperative association. Strictly speaking, defendant, Brandes Creamery, is not a member of plaintiff association; but the same principles of public policy are involved in a breach by said defendant of its agreement to buy as in a case where a member commits a breach of his obligation to sell or deliver. Moreover, the time involved, being at least three years from August 6, 1931, is such as to render it impossible when the issues herein were joined to determine the volume of business which would represent defendants' "entire requirements" for the term covered by the contract in suit. For these reasons, we are unable to agree with defendants, but, on the contrary, think that injunctive relief is available to plaintiff.

■ Defendants also contend that the dissolution of defendant, Brandes Creamery, prevents the granting of injunctive relief against it; and that no equitable relief will be granted against a successor corporation to enforce a contract by specific performance or by injunction; hence, the relief sought herein is not available against defendant, Brandes Creamery, Inc. We think that the dissolution of Brandes Creamery and the organization of Brandes Creamery, Inc., had but one purpose and that was to avoid the contractual liability of Brandes Creamery arising from the contract in suit. In this state of the record, equity will look through the form at the substance. It is true that preferred stock in Brandes Creamery, Inc., was issued to a number of persons, who were not stockholders in Brandes Creamery; but the fact remains that the plant and business of the older corporation was taken over by the later one, the same organization was continued and the names of the two corporations differ only by reason of the addition of the abbreviation "Inc." to the later

name. We note, too, that the articles of incorporation of Brandes Creamery, Inc., do not provide for the issuance of preferred stock as required by section 25-224, Oregon Code 1930. These articles of incorporation are dated March 21, 1932, and indicate that the issuance of preferred stock was an afterthought, which was acted upon by the filing of Supplemental Articles of Incorporation on April 7, 1932.

This is not a case where merely a claim owing by a corporation is sought to be collected from its assets in liquidation or in the hands of its successor. This is a case where an attempted evasion of a contractual duty by the formation of a new corporation, new (but not materially different) in name only, is interposed as a defense in equity where injunctive relief is sought against a continuing breach of said duty.

We think that plaintiff is entitled to injunctive relief against both corporations. We are aware that the dissolution of the older corporation renders ineffective any injunctive order as to it; but we deem the later organization merely a continuation of the former, and hold that it should be enjoined from purchasing grade B milk or cream for its bottle and can requirements from any other source or sources than from plaintiff, and from attempting to induce plaintiffs' members to breach their contracts of membership.

This holding is not based upon the statute, but upon the principle that the formation of the later corporation was a subterfuge resorted to by the older corporation only for the purpose of evading the agreement of said older corporation to purchase its entire requirement of said commodity from plaintiff and that said later corporation is but a continuation of the former, under a slightly different name. Although the facts of the instant case are not closely reflected therein, the

following authorities support this principle: *American Bank v. Port Orford Co.*, 140 Or. 138 (12 P. (2d) 1014); *Beal v. Chase,* 31 Mich. 490; *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223 (118 N. W. 456, 32 L. R. A. (N. S.) 616); *Southern Steel Co. v. Hopkins,* 157 Ala. 175 (47 So. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20, 16 Ann. Cas. 690); *Douglas Printing Co. v. Over,* 69 Neb. 320 (95 N. W. 656); *Otis v. Ohio Mines Co.*, 15 Ariz. 264 (138 P. 777); *Zachra v. American Mfg. Co.*, 179 Mo. App. 683 (162 S. W. 1077); *Lincoln Safe Deposit Co. v. Continental Life Ins. Co.*, 213 Mo. App. 561 (249 S. W. 677); *Auglaize Box Board Co. v. Hinton,* 100 Ohio St. 505 (126 N. E. 881); *American Ry. Express Co. v. Snead,* 96 Okla. 278 (221 P. 1032); *Northwest Perfection Tire Co. v. Perfection Tire Corporation,* 125 Wash. 84 (215 P. 360); *Kentucky Beaver Collieries v. Mellon & Smith,* 200 Ky. 198 (254 S. W. 421); *Goodwin & Jean v. American Ry. Express Co.,* 220 Mo. App. 695 (294 S. W. 100); *Mobley v. Hagedorn Const. Co.*, 168 Ga. 385 (147 S. E. 890); *Shaw v. Monongahela Ry Co.*, 110 W. Va. 155 (157 S. E. 170).

We venture to quote from an annotation to the case of *McAlister v. Am. Ry. Express Co.,* found at page 1137 of Volume 15, A. L. R.:

" 'A merger, rightly understood, is not the equivalent of consolidation at all, but exists where one of the constituent companies remains in being, absorbing or merging in itself all the other constituent companies.' Vicksburg & Y. City Teleph. Co. v. Citizens' Teleph. Co. (1901) 79 Miss. 341, 89 Am. St. Rep. 656, 30 So. 725.

     \*      \*      \*      \*      \*

"The term is here used as describing transactions whereby one corporation acquires the stock as well as the business and assets of another. It is to be distinguished in legal effect from a mere acquisition of the property of one corporation by another, as is pointed

out in Blue Ridge Electric Co. v. American Bank Note Co. (1916) 150 C. C. A. 509, 237 Fed. 755. Drovers' & M. Nat. Bank v. First Nat. Bank (1919) 171 C. C. A. 45, 260 Fed. 9: Koch v. Speedwell Motor Car Co. (1914) 24 Cal. App. 123, 140 Pac. 598, 600; Seaboard Air Line R. Co. v. Leader (1902) 115 Ga. 702, 42 S. E. 38; Ft. Wayne & W. Valley Traction Co. v. Kendlesparker (1910) 46 Ind. App. 299, 92 N. E. 228; Zimmerman v. Grush Produce Co. (1911) 156 Mo. App. 588, 137 S. W. 642, and Graham Paper Co. v. Sheridan Pub. Co. (1913) 172 Mo. App. 495, 158 S. W. 92.

"Where a merger takes place, the subsisting corporation is answerable for the liabilities of the corporation which goes out of business. Hawkins v. Central of Georgia R. Co. (1903) 119 Ga. 159, 46 S. E. 82; Atlanta B. & A. R. Co. v. Atlantic Coast Line R. Co. (1912) 138 Ga. 353, 75 S. E. 568; Walker v. Rome, (1909) 6 Ga. App. 59, 64 S. E. 310; Louisville & N. R. Co. v. Central Kentucky Traction Co. (1912) 147 Ky. 513, 144 S. W. 739, Ann. Cas. 1915A, 857; Carter Coal Co. v. Clouse (1915) 163 Ky. 337, 173 S. W. 794 (obiter); American R. Exp. Co. v. Com. (1920) 190 Ky. 636; 228 S. W. 433 (obiter); Thompson v. Abbott (1875) 61 Mo. 176; Palmer v. Chicago & A. R. Co. (1909) 142 Mo. App. 633, 121 S. W. 1087; Couse v. Columbia Powder Mfg. Co. (1895) — N. J. Eq. —, 33 Atl. 297; Collinsville Nat. Bank v. Esau (1918) 74 Okla. 45, 176 Pac. 514; Tacoma Ledger Co. v. Western Home Bldg. Asso. (1905) 37 Wash. 467, 79 Pac. 992. The absorbing company is liable in equity for claims against the absorbed company, both liquidated (Camden Interstate R. Co. v. Lee (1905) 27 Ky. L. Rep. 75, 84 S. W. 332; Powell v. North Missouri R. Co. (1867) 42 Mo. 63) and unliquidated (Coggin v. Central R. Co. (1879) 62 Ga. 685, 36 Am. Rep. 132; Tompkins v. Augusta Southern R. Co. (1897) 102 Ga. 436, 30 S. E. 992; Ledbetter v. Sunflower State Oil Co. (1915) 96 Kan. 636, 152 Pac. 763; Louisville & N. R. Co. v. Biddell (1902) 112 Ky. 494, 66 S. W. 34 (obiter) Kentucky D. & W. Co. v. Webb, 181 Ky. 90, 203 S. W. 870; Bruce-MacBeth Engine Co. v. J. P. Eustis Mfg. Co. (1917)

8 Ohio App. 341); and it is no defense that the absorbed company was insolvent (Camden Interstate R. Co. v. Lee (1905) 27 Ky. L. Rep. 75, 84 S. W. 332.)"

■ Paragraph 9 of the contract in suit is as follows:

"It is agreed that the Association has expended large sums of money in an effort to secure delivery to consumers in the City of Portland, of milk in a clean and sanitary and wholesale condition and that its members have spent large sums of money to build up healthy herds and provide sanitary conditions and that the Association will suffer large and substantial damage should the distributor refuse or fail to carry out this contract upon his part, but the exact amount of such damages is difficult of computation and that therefore the parties have agreed that reasonable damages for a breach thereof by the Distributor would be such sum as constitutes 10% of the estimated price of the aggregate quantity of milk which the Distributor would take in one year should he perform his contract, based upon the actual amount of milk purchased by the Distributor for three months last preceding his breach of this contract at the average price paid by him during such three months, excepting that if this contract has less than one year to run at the time of breach thereof by the Distributor, the amount of such damages shall be decreased in proportion to the portion of such last year of the term of this contract which has elapsed at the time of breach, and that the Association shall be entitled to recover such liquidated amount of such damages in the event of such a breach of this contract in addition to any amounts due to the Association at the time of such breach."

This provision prescribes the same penalty for the violation of one provision of said contract as for the violation of any other of said provisions, despite the fact that the contract contains provisions which have no reasonable relation to the amount specified as recoverable under the terms of the above quoted para-

graph. We think that said paragraph imposes nothing more than a penalty or forefiture: *Electrical Products Corporation v. Ziegler Drug Stores,* 141 Or. 117 (10 P. (2d) 910, 15 P. (2d) 1078).

■ The difficulty confronting plaintiff rendering it impossible with any degree of accuracy to plead definite facts in support of its claim for damages, in our opinion, justifies the conclusion that only by the aid of injunctive relief is plaintiff afforded an adequate remedy. Defendants urge that the amended complaint fails to state facts upon which any award of damages can be predicated. We think that all of the facts in that regard available to plaintiff at the time the amended complaint was drawn and pertinent to the proper measure of damages involved appear in the pleading.

We can see no good reason for requiring plaintiff to institute another suit in order to recover the damages it has sustained.

By appropriate supplemental pleadings the issues of fact, if any, with reference to the volume of defendant's requirements for the bottle and can trade and the amount due to plaintiff by reason of defendant's failure to comply with the contract in suit, can be joined, testimony in support thereof adduced, and a balance determined in the trial court.

A suit by plaintiff against defendant, Brandes Creamery, was consolidated with this case. In that case, a decree was entered cancelling the contract in suit and awarding plaintiff judgment for $501.04. Plaintiff appealed. The two cases were argued together on appeal. Our conclusion herein leads to a reversal of that decree.

It is ordered that the decree of the circuit court be reversed and that this cause be remanded with direc-

tions to enter an order enjoining defendants and both of them from violating or breaching the contract in suit by said defendants or either of them purchasing or otherwise procuring the requirements of their bottle and can trade or any part thereof or the said requirements of either of said defendants or any part thereof elsewhere than from plaintiff during the terms of said contract, except as in said contract allowed; and also enjoining and restraining said defendants and each of them from attempting to induce plaintiff's members or any member of plaintiff to violate the contractual duties or any contractual duty to plaintiff arising by virtue of the contracts or any contract of membership in plaintiff, and from selling or delivering grade B milk or cream to said member or any of them for that purpose; and with the further direction to permit appropriate supplemental pleadings to be filed and an accounting to be had determining how much is due from defendants to plaintiff by reason of the failure on defendants' part to purchase the entire requirements of their said bottle and can trade from plaintiff except as in said contract permitted.

It is further ordered that plaintiff recover its costs and disbursements on this appeal from defendants.