Argued May 5, reversed and remanded July 20, 1977

# FISHERMEN'S MARKETING ASSOCIATION, INCORPORATED, *Appellant,*
## *v.*
## WILSON, *Respondent.*
## (TC 75-390, SC 24676)
### 566 P2d 897

Richard L. Barron of Bedingfield, Joelson, Gould and Barron, Coos Bay, argued the cause and filed a brief for appellant.

M. Chapin Milbank of Schlegel, Milbank, Wheeler, Jarman & Hilgemann, Salem, argued the cause and filed a brief for respondent.

LINDE, J.

**LINDE, J.**

Plaintiff, incorporated under California law as a non-profit cooperative association, sued defendant, one of its members, to collect liquidated damages and attorney's fees for his breach of the association's by-laws and membership agreement. The trial court refused to enforce the provisions for liquidated damages, and plaintiff appeals.

The court, sitting without a jury, found the following allegations of plaintiff's complaint to be true: Plaintiff is a non-profit cooperative association engaged in marketing fish for its members in Oregon and California. Defendant Wilson joined the association in March, 1974. In becoming a member, Wilson agreed to deliver his catches of fish to dealers designated by the association according to its by-laws and standard membership agreement. In February, 1975, Wilson delivered a catch of fish to a non-designated dealer in violation of the agreement and by-laws. These findings are undisputed.

The final paragraph of the complaint alleged:

> The actual damage suffered by Plaintiff as a result of Defendant's acts as hereinabove alleged is difficult to fix. However, the by-laws and standard membership agreement of Plaintiff provide for the recovery of liquidated damages in the sum of $1,000.00 together with Plaintiff's reasonable attorney's fees, and Plaintiff is entitled to the sum of $1,000.00 as liquidated damages together with reasonable attorney's fees of $600.00.,

followed by a prayer for the stated liquidated damages and attorney's fees plus costs and disbursements. As to this allegation, the court found that "it is true the membership agreement provides for liquidated damages and attorney's fees, and the remainder of factual allegations therein are not true." Concluding that actual damages from defendant's breach of the agreement could be ascertained, the court entered judgment for the defendant. For the reasons that follow, we hold

that the relief prayed for should have been granted and therefore reverse.

■ A preliminary issue is raised by the parties under the "best evidence rule," ORS 41.610. At the trial, much was made of the fact that the plaintiff did not produce the actual membership agreement signed by Mr. Wilson in order to prove the terms of his membership. Pursued in this court, the issue proves to be a red herring. The trial court's findings of the relevant terms of the agreement, quoted above, are not challenged by defendant, though he points to the absence of a finding that he signed a specific agreement. Thus the court's conclusion that the liquidated damages provision was a term of defendant's membership, but that it was unenforceable, puts the question of its enforcement before us.

In arguing that the provisions for liquidated damages should not be enforced unless actual damages cannot be ascertained, defendant relies on decisions such as *Chaffin v. Ramsey,* 276 Or 429, 555 P2d 459 (1976) and *Medak v. Hekimian,* 241 Or 38, 404 P2d 203 (1965). However, while such provisions in ordinary contracts have often met a hostile reception at common law, *see e.g.,* Restatement of Contracts, § 339, cooperative associations won the right to include them in their membership agreements by specific legislation. ORS 62.355(2) provides:

> The contract referred to in subsection (1) of this section may fix and require liquidated damages to be paid by the member to the cooperative in the event of his breach of contract. Liquidated damages may be a percentage of the value or a specific amount per unit of the products, goods or services involved by the breach, or a specific sum.

This provision originally entered the law of Oregon in 1921. Oregon Laws 1921, ch 260. Its proper significance can be derived from the early history of producer cooperatives.

Although small local cooperative associations ex-

isted in the 19th century, cooperatives as a means of giving many individual producers some control over the marketing of their often perishable produce saw an explosive growth after 1916, spurred in part by the agricultural depression following the first World War. The development brought with it a host of difficult legal problems, among them the contractual basis of organization, the legal status of the association, its role in the marketing of its members' produce as exclusive purchaser, agent, or trustee, and above all, the challenge to marketing agreements as contracts in restraint of trade. Since the success of the cooperative depended on associating a large proportion of all producers for joint marketing over a substantial period of time, the enforceability of membership agreements against individual "dumping" was a key issue. These problems quickly gave rise to litigation, to a large legal literature,[1] and to legislative solutions. As one writer reported, contract provisions of the kind that could be attacked as "penalty clauses" were of great practical importance but had been invalidated in some states, hence they were expressly authorized in many of the state statutes on marketing associations. Henderson, *supra,* n. 1 at 96-97.[2]

Chapter 260 of Oregon Laws 1921 was one of these statutes enacted to aid the formation of such cooperative associations. The clause that corresponds to ORS 62.355 originally read:

> The bylaws and marketing contract may fix, as liquidated damages, specific sums to be paid by the member to the association upon the breach by him of any

---

[1] Contemporaneous descriptions of the problems and references to early cases are found in Ballantine, *Co-operative Marketing Associations,* 8 Minn L Rev 1 (1923) and sources cited *id.,* n 1; Henderson, *Coöperative Marketing Associations,* 23 Colum L Rev 91 (1923); Meyer, *The Law of Co-operative Marketing,* 15 Calif L Rev 85 (1927); Arnold, *Can the Courts Aid Cooperative Marketing?,* 15 Minn L Rev 40 (1930).

[2] Meyer, *supra* n. 1 at 90, called the remedies section of the general cooperative marketing act the "most important . . . and the one most frequently invoked". The importance that the organizers of cooperatives attached to these clauses was described and criticized by Arnold, *supra* n. 1.

provisions of the marketing contract regarding the sale or delivery or withholding of products; and any such provisions shall be valid and enforceable in the courts of this state.

It continued:

> In the event of any such breach or threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract, and to a decree of specific performance thereof. . . . Or L 1921, § 6954.

The validity of the statute was sustained in one of the leading cases on the subject of marketing associations, *Oregon Growers' Co-operative Ass'n v. Lentz,* 107 Or 561, 212 P 811 (1923), a suit to enforce a marketing agreement by injunction and specific performance. Interesting for the present case is that the recalcitrant member defended on the ground that the liquidated damages clause of the agreement provided an adequate remedy at law. This court, in 1923, stated its understanding of the reasons why the preceding session of the legislature had provided for injunctive relief as well as liquidated damages to enforce the association's membership agreements:

> . . . Its success, therefore, and the benefits to be derived by the members thereof, is wholly dependent upon the performance, by all of the contracting parties, with the terms and conditions of their respective contracts. In order to carry out the objects and purposes for which it was organized, it is necessary for the association to enter into contracts for the disposal of the products of its members. Before it can safely make such contracts, it must be assured that it will obtain the products contracted for. It must also be able to form a reasonable estimate, in advance, of the amount of products which will be grown on the acreage stipulated, and maintain a sufficient organization and force to prepare the same for market. It is also necessary to secure the capital or credit required to discharge its obligations to the growers and to conduct and carry on its business. The perishable nature of the products handled, the uncertainty of the market conditions and prices, its inability to buy these products from nonmembers, and the limited time in

which its business for each season must be conducted and completed, makes it essential that each member of the association should perform his contract according to its terms. From these considerations, it must be obvious that an action at law to recover the stipulated damages would not afford to the plaintiff a full, adequate and complete remedy for the wrong done to the association, and indirectly to its members by a member's breach of his contract. *Id.* at 580.

Thus the court recognized the statutory policy for these remedies with respect to membership agreements, in contrast to the role of liquidated damages in ordinary commercial contracts.[3]

■■ This does not necessarily mean legislative sanction for any and all liquidated damages provided in cooperative by-laws and membership agreements, without regard to their severity and their relation to the breach. Such provisions are enforceable as long as they relate broadly to the assumptions that led to their authorization by statute. The central assumption was that marketing cooperatives have a greater stake in each member's adherence to his agreement for the term of his membership than only the monetary loss resulting from a particular sale by the member outside the marketing agreement. *See Oregon Growers' Cooperative Ass'n v. Lentz, supra.* Thus the mere fact that monetary loss from a given breach is ascertainable does not relieve a member from an otherwise valid provision for liquidated damages. Nor can it matter that the membership agreement is a standardized or "adhesion" contract and that the liquidated damages clause is not individually negotiated, as defendant argues, since the statute obviously contemplates just such an agreement. The test is whether the provision,

---

[3] In *Dairy Co-operative Ass'n v. Brandes Creamery,* 147 Or 488, 30 P2d 338 (1934), the cooperative sued to enforce its contract with a distributor. It did not seek liquidated damages, but, as in *Lentz, supra,* defendant pointed to the contract provision for such damages as an adequate remedy at law. In rejecting this defense, the court described the provision as a penalty or forfeiture. *Id.* at 501. Contracts with purchasers, of course, were not governed by ORS 62.355(2) or its 1921 predecessor.

and the occasion for invoking it, fall within the statutory purpose, not whether another remedy would serve in the particular case.

■ In this case, the occasion for invoking liquidated damages was a member's breach of the core of the cooperative marketing agreement by selling his catch outside its terms. The amount of liquidated damages set in the agreement might exceed the statutory policy if applied to minor, technical, or inadvertent violations of the agreement (or perhaps if cumulated for multiple breaches), but we cannot hold them unauthorized by the statute as applied to the circumstances of the present marketing association and type of violation. Since the trial court's findings established the breach of the agreement and the terms of the provision for liquidated damages, it should have enforced the provision.

Reversed and remanded.